**Lesta PRESTON et al., Appellants,**

v.

**Reggie PRESTON et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 22, 1957.

M. O. Wheeler, J. K. Wells, Paintsville, for appellant.

Chesley Lycan, Ashland, Eldred E. Adams, Louisa, for appellee.

STEWART, Judge.

This action seeks to cancel upon grounds of undue influence and mental incapacity a deed and a will by the terms of which Jennie Borders in her declining years disposed of her estate. Another averment of the complaint asked that two of the defendants-appellees, Reggie Preston and Cecil Short, render an accounting as to all money and property of the decedent that came into their hands under appointments as attorneys in fact. This action was instituted by two heirs at law of Jennie Borders, now deceased.

By agreement all the proof was taken by deposition and the issues were tried by the lower court without the intervention of a jury. Upon submission of the case the trial judge held that the deed and the will should not be set aside, and that none of the decedent's property of any kind or description ever came into the possession or under the control of the attorneys in fact. Thereaft-er, judgment was entered dismissing the complaint.

This appeal charges error in the ruling of the trial judge to the effect that Jennie Borders was mentally capable and free from undue influence when she executed the two instruments now under attack. It is further contended the lower court wrongfully refused to compel the attorneys in fact to account in respect to their management of Jennie Borders' business affairs. Appellants frankly admit at the outset that the findings of fact on these issues should be upheld unless they are shown to be clearly erroneous. CR 52.01.

The pertinent evidence in the record reveals that Jennie Borders died on August 27, 1953, at the ripe age of 83. She resided at the time, and had lived for many years, on a small farm of twenty acres, about four miles from Paintsville. The picture of her as it emerges from the proof is that of a woman who was deeply religious, who had better than average business ability and who possessed traits of independence and cautiousness. The estate she amassed was valued at between $30,000 and $50,000. Although she was married three times, she was never blessed with a child. She had outlived her first two husbands but appellee, Menefee Borders, her third spouse, survived her. However, she left numerous collateral relatives.

During the latter years of her life, at least from the year 1950 until the date of her death, Jennie Borders was physically infirm. Her condition, as diagnosed by those who treated her, was due to hardening of the arteries accompanied by high blood pressure; and she often suffered from painful headaches and spells of dizziness which seemed to have been induced by hypertension. She experienced difficulty in getting around and spent a good deal of her time in bed.

Sometime in October of 1950, she sent for her great-niece, Emmalene Mullins, and her husband, Dewey Mullins, both of whom are appellees herein. They promptly came

to her home and, while there, Jennie Borders requested them to live with her permanently. The Mullins agreed and moved in the next day and continued to reside with the Borders until Jennie Borders died; in fact, they have remained with Menefee Borders until the present on the property in controversy. Emmalene Mullins, besides taking care of the personal needs of Jennie Borders, did all the housekeeping, consisting of preparing the meals, doing the washing for the whole family and performing all the other necessary household chores. Menefee Borders testified his treatment by her and her husband has been satisfactory in every way. He said: "I couldn't ask them to be better to me".

On January 18, 1951, Jennie Borders, her husband joining in, conveyed the twenty acres of land comprising her home place to Emmalene Mullins. This property was variously estimated to be worth from $7,500 to $15,000. The deed, after providing for the retention of a life interest in the property by the grantors, contained a stipulation that the grantee should move into the home of the grantors and "care for them during the remainder of their lives." This writing also gave all the furniture to Emmalene Mullins upon the death of both the Borders.

A few days later, on January 23, 1951, Jennie Borders went to Paintsville to the office of R. B. Harrington, her attorney, and caused him to prepare a will which she then and there executed. Harrington was also the attorney who drafted the above deed of conveyance. He was called as a witness in this action and testified that, at the time of executing the deed to Emmalene Mullins and upon the occasion of making her will, Jennie Borders had a mind that was clear, she also had a very fixed purpose to execute these two documents, and she was definite as to the exact provisions she wanted in each of them.

Harrington also testified that when Jennie Borders came to him about her will she had with her notes, in her own handwriting, which indicated the testamentary disposition she wished to make of her property. These she turned over to the attorney with directions that the will be precisely drafted in accordance with her notations, and, according to Harrington, the instrument he drew up followed her instructions to the letter.

A rather unique clause in the will was Item 6 which reads: "It is my intention to give each heir what I desire that they have during my lifetime and I intend to dispose of my estate prior to my death except for a sufficient amount to supply my wants and needs during my lifetime." Pursuant to this provision, both prior to and after the execution of the will, Jennie Borders did, in fact, give most of her property to her relatives and to certain kindred of her first husband, Erastus Miller, from whom she had received a large portion of her estate at his death. So completely did she divest herself of her property by gifts while still alive that only $6,000 in personalty constituted the assets of her estate. A simple residuary clause of her will specified that any surplus should be equally divided among six nephews and nieces and her surviving husband and Dewey Mullins.

The following relief is sought in this appeal: (1) That the deed from Jennie Borders and her husband, Menefee Borders, to Emmalene Mullins be cancelled and that the will of Jennie Borders of date January 23, 1951, be adjudged void because it is claimed the decedent lacked mental capacity to make these two writings and, in addition, was induced to execute both instruments through undue influence; and (2) that appellees, Reggie Preston and Cecil Short, be required to render an accounting for all property belonging to the estate of Jennie Borders over which they assumed control as the decedent's attorneys in fact.

A careful reading of the record brings to light no evidence of undue influence as to the execution of the deed and the will un-

less the fact that the Mullins resided in the Borders' house and cared for them is such evidence. The proof here is that the Mullins went to live with the Borders at the instance and request of Jennie Borders, the latter having become mindful of the fact that she no longer was able to maintain the home for herself and her husband. It was not a situation that was initiated or first thought of and suggested by either of the Mullins. How Jennie Borders happened to choose her great-niece and the latter's husband as the ones to look after her and her husband is left open to conjecture. But whatever reason prompted her to select the Mullins to come into her home the choice has been, from the testimony of Menefee Borders who is still occupying the home and being cared for, a satisfactory one.

It appears, too, that Jennie Borders caused the deed and the will to be drawn up after she had had ample opportunity to observe how the Mullins habitually conducted themselves toward her and her husband in their home. It is also significant that she included in this deed the provision that she and her husband were to retain full control of the property during their lifetime. This was a wise and cautious stipulation, and it is not likely that one who could be easily persuaded or lightly influenced would have placed such a limitation upon the conveyance. We have alluded to the fact that Jennie Borders had notes in her own handwriting on what provisions she wanted in her will, and, according to the attorney who reduced the notes to writing, she would not agree to any variance from the testamentary plan she had formulated. From these facts we are led to believe the execution of the deed and the will was the result of Jennie Borders' independent decision.

The proof is contradictory on the issue of mental incapacity. Twelve witnesses, eight of whom were relatives of the decedent, testified for appellants as to the mental condition of Jennie Borders. They stated in substance that she was incapable of transacting any business the last three years of her life for the reason that her mentality was affected by the state of her health. One of these was her brother, Tip Preston, who stated on cross-examination that her mind would "come and go", but that otherwise it was all right. The sole medical evidence produced by appellants was that of Doctor J. D. Williams, an eye specialist whose practice had covered a span of sixty years. He treated Jennie Borders for an eye ailment several years before her death, and he was of the view that her mind was abnormal when she executed the deed and will.

Twenty-five witnesses appeared in behalf of appellees. Eleven of these were disinterested persons and among this last number were Doctor F. M. Picklesimer, who was her personal physician for years, including the time prior to her death; Doctor Paul B. Hall, a life-long close friend who saw her often and sometimes attended her during illness; Don C. Vanhoose, the former county attorney of Johnson County, who knew her well and had contacted her many times near the end of her life; R. B. Harrington, the present county attorney of Johnson County who, as has been shown, had drafted the deed and the will for Jennie Borders; W. A. Johnson, an attorney who had represented her in certain litigation within a few years of her death; and Leonard Walters, a Baptist minister of age 65 who was an intimate acquaintance of hers all his life and had visited her practically every week during her latter years. All these twenty-five witnesses testified Jennie Borders was of sound mind during the whole of 1951, the year in which she made the deed and will. Furthermore, they stated her mind was clear until she received a stroke that culminated in her death.

All in all, it is our view that the evidence in this case was sufficient to support the findings of the lower court that Jennie Borders was not subjected to undue influence when she made the deed and the will and that she was mentally capable when

she executed these two instruments. Therefore, when CR 52.01 is applied to the facts of this case, the lower court's findings must be sustained.

The final complaint relates to the refusal of the lower court to compel the two attorneys in fact of Jennie Borders to account in respect to their management of her affairs. In this connection the evidence discloses that on October 24, 1950, Jennie Borders appointed Reggie Preston and Cecil Short her attorneys in fact. This appointment was revoked on October 1, 1952. The proof is uncontradicted that the only act performed by these appointees was to attend a meeting of the stockholders of a wholesale grocery company at Huntington, West Virginia, in which Jennie Borders owned stock. The testimony is clear and convincing that none of her property ever came into the possession or under the control of these two men during the time they served as her attorneys in fact. While Jennie Borders herself may have, during the period these appointments were unrevoked, given away a large part of her estate, these attorneys in fact are not to be held accountable for their principal's actions, as the relationship created by the appointment of an attorney in fact is that of principal and agent rather than that of trustee and cestui que trust or that of committee and ward. See Reily v. Fleece, 259 Ky. 330, 82 S.W.2d 341.

Wherefore, the judgment is affirmed.