Elizabeth Nickell DEATON, Committee
for George Hubert Hale, an
incompetent, Movant,

v.

Robert V. HALE, Individually and as
Alternate Executor of the Estate of
Minnie Hale, et al., Respondents.

Supreme Court of Kentucky.

Jan. 16, 1979.

Frank G. Gilliam, David A. Weinberg, Stoll, Keenon & Park, Lexington, for movant.

Turley, Savage & Moore, Lexington, for respondents.

STERNBERG, Justice.

This is a suit for an accounting instituted by the committee for an incompetent person against the incompetent's attorney-in-fact (wife). The committee seeks restoration of the incompetent's real and personal property transferred to or disposed of by the attorney-in-fact.

George and Minnie Hale were married in 1965, he a childless widower, 75 years of age, and she, 73 years of age, was blessed with both children and grandchildren. On September 18, 1970, while hospitalized at the Central Baptist Hospital in Lexington, Kentucky, George executed a power of attorney naming and constituting Minnie as his attorney-in-fact, with blanket power and authority to sell and convey any or all of his real or personal property without limitation. From the time of his marriage George had a history of poor health; for example, from January, 1969, through October, 1972, he was hospitalized on at least seven occasions for no less than 98 days. During the spring of 1972, Minnie learned that she had terminal cancer. On May 10, 1972, George and Minnie met in their home with their attorney, who prepared several documents for George to execute. One of the documents was a "ratification" of the sales and transfers made by Minnie pursuant to the authority of the power of attorney. This instrument was duly executed by George. Next, there was a last will and testament which George duly executed. The will in part provided that upon the death of George all of his property should go to Minnie, and it further provided that in the event Minnie should predecease George, his estate would pass to Johnie and Mae Fern Hale. Finally, George signed a petition for the adoption of Johnie Hale; however, the adoption proceeding was not completed. Johnie Hale is Minnie's son and Mae Fern Hale is Johnie's wife. Arrangements had been made for Dr. Martin Gebrow and Dr. Bailey Binford, both psychiatrists, to attend the meeting and to perform mental-status examinations on George. Each of the doctors came to the conclusion that George, although hard of hearing and unable to read, was able to understand the nature, character and effect of these documents. George was advised by his counsel that his real estate had been sold or had been placed in Minnie's name and that Minnie had disposed of his stocks and bonds, but counsel did not enumerate the ones that had been sold, nor did he advise what disposition had been made of the proceeds of the sales, other than that the money was being used for George's personal care.

Minnie Hale predeceased George. She died testate on December 2, 1972, nominating her son Johnie as the executor of her will. Minnie had executed her will on August 10, 1971, in which she named Johnie, her son; Mae Fern, her daughter-in-law; and Robert V. Hale, her grandson, as her sole and only legatees. George was not mentioned in her will.

On December 20, 1972, at the age of 83 years, George was adjudged incompetent. Two days later the movant, Elizabeth Nickell Deaton, qualified as his committee. On November 5, 1978, George departed this world of tears. On February 1, 1973, shortly after qualifying as George's committee, the movant filed suit in the Fayette Circuit Court charging that during George's lifetime he had accumulated an estate consisting of stocks, bonds, bank deposits and real estate with an estimate value of $500,000; that when the committee qualified and took charge of the estate it consisted of only a checking account in the sum of $13,284.01, a small duplex home, and a number of stocks which were alleged to be of no value. The

committee charged that Minnie, while acting pursuant to the power of attorney, breached her fiduciary duty to George. The committee seeks an accounting from Minnie for all property, income, earnings, benefits and claims from and concerning all property which had formerly belonged to George; an award for damages to George's estate in the sum of $500,000, resulting from a charge of having wrongfully administered the estate; and an award for punitive damages in the sum of $250,000. Further, the committee charges that the ratification of the sales and transfers and the execution of George's will, each of which was signed on May 10, 1972, were invalid as the result of undue influence. The suit was instituted against Johnie Hale, individually and as executor of the will of Minnie Hale, Mae Fern Hale and Robert V. Hale. Johnie Hale died testate on April 4, 1973, and Mae Fern Hale was appointed executrix of his will. Robert V. Hale was appointed as successor executor of the will of Minnie Hale, his grandmother. An amended complaint was filed which reflected the changes in the status of the parties.

The case was tried to the court. However, it was referred to the commissioner of the Fayette Circuit Court for the taking of proof as to what property came into Minnie Hale's possession and the disposition thereof. The trial court found that George was mentally capable to execute the power of attorney on September 18, 1970; that no undue influence was exerted on George to secure its execution; that although George was competent to approve the ratification, he did not know what he was approving when, on May 10, 1972, he signed the attempted ratification of the acts and conduct of his attorney-in-fact (wife). The trial court ordered restorations and payment of certain monies to movant, subject to a set-off in favor of respondents.

An appeal was taken to the Court of Appeals of Kentucky by George's committee, and a cross-appeal was taken by Robert V. Hale, individually and as alternate executor of Minnie Hale's estate, and by Mae Fern Hale, individually and as executrix of the estate of Johnie Hale. The case was affirmed on both the appeal and the cross-appeal. Discretionary review was granted by this court on May 16, 1978.

There are two primary issues presented. Is there a duty on the part of an agent, when demanded by the principal, to account for and restore to the principal cash, real estate and securities owned by the principal at the inception of the agency which were either transferred to or disposed of by the agent while acting as such? If so, did the trial court err in disposing of this issue?

The movant takes the position that such a duty is mandatory. On the other hand, the respondents argue that the trial judge has a discretion, based upon the evidence, of whether to require the agent to make such an accounting.

In this action Minnie was acting for and on behalf of her principal-husband George under a power of attorney of the broadest authority. We need to ask, and to answer, the question: For what purpose was the power of attorney executed?

George was a patient in the hospital on one of his many admissions when he executed the subject power of attorney (9/18/70). It can hardly be denied that Minnie was undertaking to care for any and all of George's estate by reason of his inability to do so. The power of attorney demonstrates that George placed in Minnie a position of trust, the freedom of decision, and, as a matter of fact, the power to do and perform any act which George himself could have done. This created not only a fiduciary relationship but one of confidentiality. By reason of George's illness, it was becoming more and more burdensome for him and Minnie to manage his affairs; thus the execution of the power of attorney. Minnie and others of her family were the objects of George's generosity prior to the date of the execution of the power of attorney. Subsequent thereto, Minnie, acting pursuant to the authority of the power of attorney, made gifts to herself and sold certain of George's real estate. The proceeds from these sales were placed in a joint checking account of hers and George's.

The trial court found that George's attempted ratification of Minnie's acts in making these conveyances was invalid, and it ordered restoration of four parcels of land, restoration of promissory notes taken in the sale of two tracts of land, and the payment of monies received by Minnie from other sales of land. However, this was subject to a setoff for medical expenses paid by Minnie for the benefit of George. The trial court did not find Minnie liable for the restoration of cash or securities which were transferred to or disposed of by her while she was the attorney-in-fact.

■ The duties and responsibilities of an agent to his principal are parallel to the nature of the particular office which the agent agrees to perform. *Aero Drapery of Kentucky, Inc. v. Engdahl*, Ky., 507 S.W.2d 166 (1974). An agent is required to exercise utmost good faith toward his principal. 3 Am.Jur.2d, § 199, Agency; *Georgia Casualty Co. v. Mann*, 242 Ky. 447, 46 S.W.2d 777 (1932). The right of a principal to require an accounting of his agent is elementary. Restatement of Agency 2d, § 382; Sell on Agency UTB, § 128. Unless otherwise agreed, there is no discretion as to whether an accounting may be required. Restatement of Agency 2d, § 382.

■ We hold that the respondents were required to make an accounting.

We next turn our attention to whether the trial judge put into proper perspective and gave proper consideration to the weight of the evidence.

■ In refusing to find the respondents liable for personal property that Minnie received, the trial court held, and the Court of Appeals approved, that in order for the committee to be entitled to any recovery with respect to personal property it must meet the burden of proof by showing that the transfers were made as a result of, under or pursuant to the power of attorney. In other words, the trial judge placed the burden of proof on the committee to establish not only that the personal property came into the hands of Minnie but that it came into her hands as a result of, under or pursuant to the power of attorney. In disposing of this issue the trial court found that the committee had not met this burden and consequently was not entitled to any relief in this respect. This determination was approved by the Court of Appeals. What the trial court and the Court of Appeals are saying is that since movant cannot, by reason of multiple deaths, prove that George's money came into the hands of Minnie by reason of the power of attorney, the movant cannot recover it.

■ Even though it was clearly established that Minnie received certain personal property from George while she was acting as his attorney-in-fact, she was not required to include it in an accounting. This cannot be. An attorney-in-fact, one acting under a power of attorney, must account for any and all property, real or personal, that is received by him from or for his principal. Restatement of Agency 2d, § 382; Seavy, Agency HB § 144. The accounting must be for all property that is received by him while acting in his official capacity or otherwise. We do not mean to say, and we do not hold, that an agent operating in a fiduciary capacity, such as in the instant case, is liable for restoration or reimbursement for all properties received by him from the principal or from whatever source. What we are saying is that the agent does have the responsibility of explaining to the satisfaction of the court what disposition was made of the properties. The agent is required to go forward with an explanation when proof is introduced showing that the property was in the hands of the agent. The burden of going forward with the proof so as to explain the disposition of any and all properties received by the agent is then with him. The issue thereby presented is one of fact to be decided by the court or by a jury, as the case may be.

Counsel for both movant and respondents discuss and dispute the applicability of *Preston v. Preston*, Ky., 307 S.W.2d 572 (1957), and *Martin v. Macey*, 4 KLR 625 (1883), to the issue. As customary, counsel differ on the effect of each.

In *Martin* the Superior Court of Kentucky, in its abstract opinion on this issue, stated:

"4. *The burden of proof is* on the party against whom judgment would be given if no proof were offered on either side, whether he be plaintiff or defendant, and whether the proposition to be established be negative or affirmative.

In this action to recover the proceeds of a horse which the plaintiff claims the defendant sold as his agent, the defendant claiming that prior to the sale he had purchased the horse of the plaintiff, the burden is on him."

Movant contends that by the application of *Martin* the burden of proof was rightly on the respondents. On the other hand, respondents argue that a proper interpretation of *Martin* would place the burden of proof on the movant. The use of the pronouns "he," "him" and "his" sometimes makes the meaning of a sentence unclear. We think it is clear, however, that what the court said in *Martin* is that the burden of proof therein was on the accused to show that he had purchased the horse from the plaintiff prior to its sale. Once the agency relationship had been established and the property shown to have been in the possession of the accused, he then had the burden of establishing the disposition that was made of the property.

*Preston* is cited by the respondents in support of their argument that they should not have been required to account for or restore to the movant the assets owned by George at the inception of the agency which were transferred to or disposed of by Minnie while acting as such. The facts in *Preston* clearly distinguish it from the case at bar. In *Preston* the burden of proof had been satisfied when the evidence disclosed that none of the assets came into the hands of the agent. Consequently, there was no need for the agent to go forward with the presentation of proof on that issue. Such was not so in the case at bar.

CR 43.01 provides:

"(1) The party holding the affirmative of an issue must produce the evidence to prove it.

(2) The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side."

In the instant case, when the evidence disclosed that portions of George's finances were transferred to or disposed of by Minnie while she was the attorney-in-fact, the burden of proof had been met, and the burden of going forward with the evidence to prove the proper disposition of those assets was with respondents.

We are of the opinion that the trial judge and the Court of Appeals erred in not requiring the respondents to include in the accounting the cash and the securities which were transferred to or disposed of by Minnie while she was attorney-in-fact.

As a further issue, movant challenges the practice of Minnie in not maintaining a separate checking account for George's money, rather than depositing his money with hers in a joint checking account.

We are of the opinion that such a practice was not the most desirable banking method, but then George's money and Minnie's money had been in such a checking account for many years and there is no present charge made that the money is not present to be accounted for. In view of the disposition that we are making of this case, it matters not that George's money is in a joint checking account with Minnie's. It is presently available if needed.

The decision of the Court of Appeals is reversed and this case is remanded to the circuit court for proceedings in keeping with this opinion.

All concur.