Nancy WABNER, Appellant,

v.

Ron BLACK and Frank Bain, Co-Executors of the Estate of George Tapp, Deceased, Appellees.

No. 98–SC–1051–DG.

Supreme Court of Kentucky.

Dec. 16, 1999.

Peter F. Ervin, Louisville, KY, Joel C. Rich, Dixon, for Appellant.

David E. Gray, Bowers, Harrison, Kent & Miller, Evansville, IN, William E. Quisenberry, Jr., Quisenberry Quisenberry & Dant, Calhoun, for Appellee.

LAMBERT, Chief Justice.

Pursuant to CR 76.20, discretionary review was granted to consider whether this Court should adopt a *per se* rule of law which prohibits attorneys in fact from making gifts to themselves, without explicit written authorization by the grantor, pursuant to a durable power of attorney.

On March 11, 1994, elderly George Tapp executed a durable power of attorney in favor of his niece, Nancy Wabner. He had recently relocated from Evansville, Indiana, to Poole, Kentucky, where he lived with his sister, Leona Poole. According to Ms. Wabner, after her uncle executed the power of attorney (in the presence of Leona Poole and Jimmy Vaughn of *Poole Deposit Bank*), her uncle instructed her to collect his Evansville bank accounts and certificates of deposit into a local bank account naming her as joint owner with right of survivorship. Leona Poole confirmed that these were Tapp's instructions to Wabner.

Tapp's will, drafted in 1986, expressly provided that any such accounts existing at the time of his death would become the property of the joint owner. His will also passed the family farm to Wabner (whose father had once owned a one-half interest in the farm) and made one-quarter residuary bequests to the Garvinwood Baptist Church, the General Baptist Foundation, Poole, and Wabner.

Pursuant to the power of attorney and allegedly complying with oral instructions from her uncle, who purportedly maintained his mental faculties until his death, Wabner collected assets valued at over $200,000 into joint bank accounts. George Tapp died on April 21, 1994 at the age of 94. At that time, Wabner had collected into the accounts approximately 80% of her uncle's assets other than the farm.

The co-executors of Tapp's will, Appellees herein, are Ron Black, the Director of Stewardship for the General Baptist Association and the Executive Director of the General Baptist Foundation, and Frank Bain, a representative of Garvinwood Baptist Church. Three months after Tapp's death, the co-executors filed an action in Webster Circuit Court seeking to set aside the transfer of Tapp's assets into the joint bank accounts. The co-executors argued that Wabner lacked the authority under the power of attorney to make gifts to herself. The court determined that the propriety of Wabner's actions under the power of attorney was a jury question. The jury returned a verdict for Wabner.

The Court of Appeals reversed, holding that all sums received by Wabner on the death of her uncle were gifts that must be restored to the estate. In reaching this conclusion, the court first determined that the power of attorney was unambiguous and thus Wabner's authority to make a gift to herself was a question of law to be determined by the trial court, not a jury. Then, relying extensively on law from foreign jurisdictions, the court adopted a "flat rule" prohibiting an attorney in fact from making gifts of his principal's property to

himself or others in the absence of a clearly expressed written authorization to do so. Applying this rule of law, the court determined that the power of attorney did not authorize Wabner to make gifts to herself.

Wabner now contends that *Deaton v. Hale*[1] is established precedent requiring a jury to make a finding of fact regarding the propriety of authorized dispositions of a principal's property by an attorney in fact. In *Deaton,* the attorney in fact (second wife of her principal) was alleged to have made gifts to herself from her principal's estate and to have maintained her principal's cash estate in a joint checking account. This Court refused to adopt a *per se* restoration rule and instead announced an "utmost good faith" standard by which to judge the transactions made by the attorney in fact. In so holding, the Court stated:

An attorney-in-fact, one acting under a Power of Attorney, must account for any and all property, real or personal, that is received by him from or for his principal. The accounting must be for all property that is received by him while acting in his official capacity or otherwise. We do not mean to say, and we do not hold, that an agent operating in a fiduciary capacity, such as in the instant case, is liable for restoration or reimbursement for all properties received by him from the principal or from whatever source. What we are saying is that the agent does have the responsibility of explaining to the satisfaction of the Court what disposition was made of the properties. The agent is required to go forward with an explanation when proof is introduced showing that the property was in the hands of the agent. The burden of going forward with the proof so as to explain the disposition of any and all properties received by the agent

is then with him. The issue thereby presented is one of fact to be decided by the court or by a jury, as the case may be.[2]

This Court recently cited *Deaton* and its "utmost good faith" standard of conduct as controlling authority in *Priestley v. Priestley*,[3] in which a jury verdict against an attorney in fact for improper disposition of funds was reinstated.

The co-executors argue that the restoration rule announced by the Court of Appeals is the correct approach. They also contend that this rule is consistent with firmly established case law holding that the construction of a written power of attorney is exclusively a question for the court.[4] We believe, however, that this case law does not compel the result achieved by the Court of Appeals and, moreover, that it is in harmony with *Deaton.* The power of attorney executed by Tapp was unambiguous. It expressly provided in writing that Wabner was to have the full power "to cash any certificates of deposits which I own or to change and redesignate the ownership thereof in his [her] sole discretion." When Wabner changed her uncle's accounts to joint accounts, she did what was expressly authorized by the power of attorney. The only question then was whether Wabner's exercise of the express authority granted by the power of attorney was attended by the utmost good faith. This was a question of fact for the jury.

The co-executors also contend that Wabner's transfer of assets into the joint accounts constituted unauthorized gifts, and thus this case is distinguishable from *Deaton.* *Deaton,* they argue, did not concern whether the power of attorney authorized the holder to make gifts to herself, but instead whether an agent is required to

1. Ky., 592 S.W.2d 127 (1979).

2. *Id.* at 130.

3. Ky., 949 S.W.2d 594, 598 (1997).

4. *Clinton v. Hibbs,* 202 Ky. 304, 259 S.W. 356 (1924); *see also Race v. Humphrey,* 301 Ky. 10, 190 S.W.2d 686 (1945) (holding that the construction of a written instrument is a question of law for the court).

make an accounting of all assets coming into the agent's possession. Although the co-executors are correct in noting that *Deaton* does not use the word "gift" to describe the pertinent transactions, the opinion does deal with property that has come into the hands of the attorney in fact. Thus, the co-executors argument that there is a significant factual distinction between this case and *Deaton* must fail.

The "flat rule" announced by the Court of Appeals has the advantage that every *per se* rule has in that it allows certainty and predictability. We do not believe, however, that this rule of law should be adopted here in light of *Deaton* and the clear language of the power of attorney authorizing Wabner to make the disputed transactions. The better approach, consistent with firmly established law, is to allow the court or the jury, as it may be, to determine as a matter of fact the propriety of the transactions. Although this Court may not agree with the verdict reached by the jury here, it is not the place of an appellate tribunal to substitute its judgment for that of a fact-finding body. Thus, the jury's verdict must stand.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the judgment of the Webster Circuit Court is hereby reinstated.

COOPER, GRAVES, KELLER, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.