RENDERED: APRIL 19, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0099-MR

LP LOUISVILLE LYNN WAY, LLC
D/B/A SIGNATURE HEALTHCARE
AT JEFFERSON MANOR REHAB &
WELLNESS CENTER; AMY BROWN,
NAMED IN HER CAPACITY AS
ADMINISTRATOR OF SIGNATURE
HEALTHCARE AT JEFFERSON
MANOR REHAB AND WELLNESS;
ASBR HOLDINGS, LLC; JJLA, LLC;
LAS PALMAS SNF, LLC; LP
MANAGER, LLC; LPMM, INC.;
LPSNF, LLC; SHC KY HOLDINGS,
LLC; SHC LP HOLDINGS, LLC;
SIGNATURE HEALTHCARE
CLINICAL CONSULTING
SERVICES, LLC; SIGNATURE
HEALTHCARE CONSULTING
SERVICES, LLC; SIGNATURE
HEALTHCARE, LLC; AND
STAKEHOLDER PAYROLL
SERVICES, LLC                                                    APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE A. C. MCKAY CHAUVIN, JUDGE
                            ACTION NO. 22-CI-001542


ALBERT RAY WOFORD, AS THE
EXECUTOR OF THE ESTATE OF

BETTY ANN WOFORD; IRA
SMEDRA; JACOB WINTNER; NEW
JEFFERSON MANOR REALTY, LLC;
THE ARBA GROUP, INC.; AND
WHEATEN, LLC                                                    APPELLEES


OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Appellants, collectively referred to as "Signature" herein,

appeal from the Jefferson Circuit Court's December 28, 2022, order denying their

motion to compel arbitration and stay the proceedings.  After careful review of the

briefs, record, and law, we affirm in part, reverse in part, and remand for additional

proceedings.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On February 20, 2008, Betty Woford executed a power of attorney

("POA"), naming her son Albert Ray Woford as her attorney-in-fact.  Betty's POA

states as follows:

> I, Betty A. Woford, . . . hereby nominate, constitute and
> appoint Albert R. Woford . . . my attorney[]-in-fact, with
> full power for me and in my name and stead, to make
> contracts, leases, sell or convey any real estate or
> personal property that I may now or hereafter own, to
> receive and receipt for any money which may now or

hereafter be due to me, to retain and release all liens on real or personal property, to draw, make and reinvest my money for me, to institute or defend suits concerning my property or rights and generally to do and perform for me in my name all that I might do if present.

On April 20, 2021, Betty was admitted as a resident to Signature Healthcare at Jefferson Manor Rehab & Wellness Center. The following day, after initialing a statement that Betty had "signed a written document allowing [him] to make decisions for [her] (e.g., POA, health care surrogate, living will)" and that a copy was provided to the facility, Albert signed a voluntary "AGREEMENT TO INFORMALLY RESOLVE AND ARBITRATE ALL DISPUTES." The signature line was entitled "Resident's Authorized Representative/ Individual* Signature," and, directly below, "*Representative understands and agrees s/he is signing in both representative and individual capacities and that this agreement binds Representative, as well as Resident."

On March 30, 2022, Albert, as the executor of Betty's estate, initiated the underlying suit against Signature alleging wrongful death and multiple claims of negligence. Importantly, while Kentucky Revised Statutes ("KRS") 411.130 mandates that wrongful death claims shall be filed by the personal representative of the deceased, the deceased's beneficiaries are the real parties in interest. *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 597-600 (Ky. 2012).

Signature moved the court to stay the proceedings and compel arbitration on the estate's negligence claims, Albert's individual wrongful death claim as Betty's beneficiary, and, arguing for a modification of current Kentucky law, any other beneficiaries'[1] wrongful death claims. In support of the motion, Signature attached copies of the signed arbitration agreement and Betty's POA. Albert opposed the motion, arguing that no valid arbitration agreement existed because he lacked the authority to bind Betty or other unvested wrongful death beneficiaries. Albert did acknowledge, however, that he "may have had the ability" to bind his own claim.

Finding that Betty's POA did not authorize Albert to make health care decisions and that the arbitration agreement was not compulsory for her admission to Signature's facility, the court concluded that Albert "did not have the requisite authority under the POA to waive, where there was no reasonable necessity to do so, his mother's right of access to the courts." The court accordingly denied Signature's motion to compel arbitration. The order did not address whether Albert's individual claim was subject to arbitration. This appeal followed.

**STANDARD OF REVIEW**

Pursuant to the Kentucky Uniform Arbitration Act ("KUAA"), KRS 417.050 *et seq.*, and the Federal Arbitration Act ("FAA"), 9 United States Code

---

[1] Excepting Albert, the record contains no information concerning Betty's possible beneficiaries.

("U.S.C.") §§ 1 *et seq*., a valid pre-dispute agreement between parties to submit to arbitration is enforceable as written. An order denying arbitration is immediately appealable. KRS 417.220(1). We review a court's decision on arbitration, "according to usual appellate standards. [KRS 417.220(2).] That is, we defer to the trial court's factual findings, upsetting them only if clearly erroneous or if unsupported by substantial evidence, but we review without deference the trial court's identification and application of legal principles." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001).

## ANALYSIS

We begin with the question of whether Betty was bound by the arbitration agreement Albert signed. As a preliminary issue, Albert asserts that, regardless of the fact that he was Betty's attorney-in-fact, he did not sign the arbitration agreement in that capacity and, therefore, Betty was not a party to the contract. Albert asserts that *Kindred Nursing Centers Limited Partnership v. Butler*, No. 2013-CA-000880-MR, 2014 WL 3722083 (Ky. App. Jul. 25, 2014),[2] presenting analogous facts, supports his claim. Signature disputes Albert's

---

[2] Citation to unpublished opinions is permitted by Kentucky Rule of Appellate Procedure 41 as persuasive authority if "there is no published opinion of the Supreme Court or the Court of Appeals that would adequately address the point of law argued by the party[.]" Because this Court in *Cambridge Place Group, LLC v. Mundy*, 617 S.W.3d 838, 841 (Ky. App. 2021), adopted the analysis of *Butler* under analogous facts, Albert's citation to *Butler* is contrary to the rules. However, as the result is the same, we have addressed the merits of his claim.

-5-

characterization of his signing capacity and argues that *Butler* is neither relevant nor controlling. We agree with Signature.

In *Butler*, the issue was whether an agreement to arbitrate signed by the principal's attorney-in-fact was valid when he affirmatively avowed therein that he was signing as Butler's son, a capacity that does not encompass the necessary authority. *Id.* at \*4-5. A panel of this Court affirmed the holding that no valid arbitration agreement existed, reasoning that, absent an indication of the capacity under which a signature was executed, the parties were bound by the capacity in which the agreement was signed. *Id.* at \*5-6 (*see also Mundy*, 617 S.W.3d at 841).

The facts in the present case are distinguishable from *Butler* and *Mundy*, as the agreement herein dictated in clear and express terms that Albert was signing in both representative and individual capacities and he made no affirmative statement otherwise. Additionally, faced with an identical signature line, the Supreme Court of Kentucky has addressed the converse argument, that the signee was acting solely in his representative capacity, and decided that the signatory, having reasonable notice of the terms of the contract, had likewise assented to arbitration in his individual capacity. *LP Louisville E., LLC v. Patton*, 651 S.W.3d 759, 774-75 (Ky. 2020). Consequently, we conclude that Albert's argument that he did not sign the arbitration agreement as Betty's representative is without merit.

We turn now to the primary issue on appeal, which is whether the court properly concluded that no valid arbitration agreement existed. The parties dispute which of them bore the burden of proof. As the party seeking to compel arbitration, Signature concedes it had the initial burden of establishing a valid agreement. *Ping*, 376 S.W.3d at 590. However, citing *Louisville Peterbilt, Inc. v. Cox*, Signature argues that the submission of the agreement signed by Albert and Betty's POA authorizing him to act on her behalf satisfied its obligation and that the burden had therefore shifted to Albert for rebuttal. 132 S.W.3d 850, 857 (Ky. 2004). Albert, however, maintains that Signature was required to prove he had actual authority to execute the agreement.

Both the KUAA and the FAA require that the existence of a valid arbitration agreement must be established before arbitration can be compelled. *Ping*, 376 S.W.3d at 590. "[T]he existence of the agreement depends on state law rules of contract formation." *Id.* For a contract to be valid and enforceable, there must be voluntary and complete assent by parties having the capacity to contract. *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015), *rev'd in part, vacated in part by Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017). An attorney-in-fact can assent on the principal's behalf only if the POA instrument confers the authority to do so. *Id.*

Because legally effective assent is required for the arbitration agreement to be valid, we agree with Albert that Signature bore the burden of proof.

Regarding the court's determination that Betty's POA did not authorize Albert to execute the arbitration agreement, Signature contends that the court misapplied the holding in *Ping* and reached an erroneous conclusion. We agree; however, as we are permitted to affirm for any reason in the record, *Fischer v. Fischer*, 348 S.W.3d 582, 591-92 (Ky. 2011), *abrogated on other grounds by Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323 (Ky. 2018), we shall consider the merits of the parties' arguments.

Signature asserts that the provisions of Betty's POA granting Albert, as her attorney-in-fact, the unqualified authority to specifically "make contracts" and "institute or defend suits concerning [her] property or rights[,]" as well as the universal grant of authority to "generally do and perform . . . all that [she] might do if present[,]" necessarily includes the power to execute the arbitration agreement. Albert disputes this broad interpretation of his authority and argues that the circuit court should be affirmed.

In *Ping*, the Kentucky Supreme Court set forth the following guidance on the construction of a POA:

> The scope of [authority is] left to the principal to declare, and generally that declaration must be express. In *Rice* [*v. Floyd*, 768 S.W.2d 57, 59 (Ky. 1989)], this Court explained that even a "comprehensive" durable power

-8-

would not be understood as implicitly authorizing all the decisions a guardian might make on behalf of a ward. Rather, we have indicated that an agent's authority under a power of attorney is to be construed with reference to the types of transaction expressly authorized in the document and subject always to the agent's duty to act with the "utmost good faith." *Wabner* [*v. Black*, 7 S.W.3d 379, 381 (Ky. 1999)]. This is consistent with section 37 of the *Restatement (Second) of Agency*, which provides that[:]

> (1) Unless otherwise agreed, general expressions used in authorizing an agent are limited in application to acts done in connection with the act or business to which the authority primarily relates.
>
> (2) The specific authorization of particular acts tends to show that a more general authority is not intended.

. . . "Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." *Restatement (Second) of Agency* § 35 (1958). . . . [It is a] fundamental rule that a written agreement generally will be construed "as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).

376 S.W.3d at 592. Applying these principles, we will address Signature's arguments.

First, because the POA identifies specific acts, we must reject Signature's contention that Albert had unfettered authority to "generally do and perform" as Betty herself could since it would render those provisions

-9-

meaningless. Instead, we read this general expression of authority as well as Albert's ability to "make contracts" in the context of the type of transactions or business to which the POA primarily relates. A review of the terms of Betty's POA demonstrates a primary purpose of permitting Albert to manage her property and her financial affairs. Therefore, to be authorized, the arbitration agreement must be incidental or reasonably necessary to accomplish those purposes, and Kentucky courts have repeatedly held that a pre-dispute arbitration agreement waiving the principal's constitutional rights does not fall within this authority. *Id.*; *Whisman*, 478 S.W.3d at 324-25; *Kindred Nursing Ctrs. Ltd. P'ship v. Wellner*, 533 S.W.3d 189, 194 (Ky. 2017).

Finally, directly refuting Signature's argument, our Supreme Court has held that a pre-dispute arbitration contract is beyond the remit of a provision authorizing an attorney-in-fact to institute or defend suits concerning the principal's property or rights. *Whisman*, 478 S.W.3d at 322-24; *see also Wellner*, 533 S.W.3d at 193. The Court explained in *Whisman* that, "[i]nstituting '*suits concerning my property rights*' is not practically or conceptually similar in any way to making an agreement that future claims will be taken to arbitration[,]" that the term "suits" denotes an action in a court of law which "arbitration by its very purpose and design . . . is the antithesis of[,]" and that the agreement "was not 'incidental' to or 'reasonably necessary' to the institution or defense of a 'suit'

-10-

concerning [the principal's] property rights." 478 S.W.3d at 323-24. Accordingly, the court was correct that Albert was not authorized to execute the arbitration agreement as Betty's representative.

In reaching our conclusion, we have considered Signature's argument that reliance on *Whisman* and *Ping* is misplaced given more recent decisions. *Whisman* was one of three actions that the Supreme Court of Kentucky consolidated into a single opinion addressing an attorney-in-fact's authority to execute a pre-dispute arbitration agreement.[3] In all three cases, the Court concluded that the agreement was unauthorized by the relevant POA. *Whisman* became final, but the Appellants in the remaining two actions, *Kindred Nursing Centers Ltd. Partnership v. Clark*, No. 2013-SC-000426-I (*Clark 1*), and *Kindred Nursing Centers Ltd. Partnership v. Wellner*, No. 2013-SC-000431-I (*Wellner 1*), sought a writ and were granted certiorari. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 137 S. Ct. 1421.

On review, the United States Supreme Court concluded that Kentucky's adoption of the clear statement rule, requiring that the authority to execute a pre-dispute arbitration agreement must be expressly stated in a POA, impinged upon the supremacy of the FAA. *Id.* As the ruling in *Clark 1* turned exclusively on the clear statement rule, it was reversed. *Id. Wellner 1* also applied

---

[3] No. 2013-SC-000426-I.

the ill-fated rule, but the case was additionally decided on alternative grounds that the POA was not sufficiently broad to authorize the arbitration agreement. *Id.* at 256, 256 S. Ct. at 1429. The United States Supreme Court held that, "[i]f that interpretation of the document is wholly independent of the court's clear-statement rule, then nothing we have said disturbs it[,]" and the case was remanded for the Supreme Court of Kentucky to make this determination. *Id.* On remand, citing favorably its analysis of the *Whisman* POA, the Court reaffirmed its conclusion that the *Wellner* POA did not authorize the pre-dispute arbitration agreement. *Wellner*, 533 S.W.3d at 194. Hence, the holdings of *Whisman* on which we have relied remain good law.

Regarding *Ping*, Signature asserts that a panel of this Court in *L.P. Pikeville, LLC v. Smith*, No. 2017-CA-000807-MR, 2018 WL 1980752 (Ky. App. Apr. 27, 2018), "held that *Ping* was not controlling and rejected the contention that the [POA] was limited to decisions about finances and property[.]" Contrary to what Signature implies, *Smith* did not hold that *Ping* articulated an incorrect statement of the law; rather, *Smith* involved readily distinguishable facts that justified reaching a contrary result. *Id.* at *6-7. *Ping* has not been overturned, and the Supreme Court of Kentucky has continued to cite it as authoritative. *See Patton*, 651 S.W.3d at 768-71.

As to whether Betty's beneficiaries are compelled to arbitrate, having

determined that Albert was not authorized to execute the agreement on Betty's behalf, it necessarily follows that he was likewise unable to bind her beneficiaries, and Signature's arguments pertaining thereto are moot. Thus, we affirm the court's denial of Signature's motion to compel arbitration on the claims brought on behalf of Betty and her unnamed beneficiaries.

However, given Albert's admission that he executed the arbitration agreement in a non-representative capacity, we must reverse the order as it pertains to his wrongful death claim. Although the parties have briefed whether the court proceedings should be stayed pending arbitration on Albert's individual claim, we remand this determination to the circuit court.

## CONCLUSION

For the foregoing reasons, the order of the Jefferson Circuit Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE ALBERT RAY WOFORD, AS THE EXECUTOR OF THE ESTATE OF BETTY ANN WOFORD: |
|---|---|
| Kif H. Skidmore<br>Benjamin M. Fiechter<br>Lexington, Kentucky | |
| | Lisa E. Circeo<br>Richard E. Circeo<br>Lexington, Kentucky |