## Reily v. Fleece.

(Decided April 16, 1935.)

THOMAS C. MAPOTHER for appellant.

DODD & DODD for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In December, 1930, the appellant made, executed, and delivered to appellee the following instrument in writing, to wit:

"Know All Men by These Presents:

"That I, Lucy Chandler Reily, Widow, of Campbellsville, Taylor County, Kentucky, do hereby constitute and appoint Hugh B. Fleece, of Louisville, Jefferson County, Kentucky, my true and lawful Attorney-in-Fact, with full power for me and in my name and stead, to make contracts, lease, sell or convey any real or personal property that I may now or hereafter own; to endorse any notes, checks, bills or exchange, certificates of stock, or registered bonds, for me and in my name and stead; to receive and receipt for any money, which may now or hereafter be due to me, to retain and release all liens on real or personal property, to draw, make, sign, issue and deliver any and all checks, contracts, or agreements; to invest, or re-invest my money for me, and to sell, transfer and deliver any securities which I may now own, and to invest and re-invest the proceeds thereof, or the proceeds of any future sales of any securities that I may own, or that I may purchase for me; to institute and defend suits concerning my property or rights, and in general to manage, control, and hold any property, real or personal, or any money that I may place in his possession, and to do and perform for me, and in my name and stead, all that I might do if present, incident to or necessary for the carrying out, any or all of the powers hereinabove enumerated, and I hereby adopt and ratify all of the acts of my said Attorney-in-fact done in pursuance of the power and powers hereby granted as fully as if I were present, acting in my own proper person, provided, however, that my said Attorney-in-fact shall not in any way bind me as surety, guarantor, or endorser for the accommodation of himself, or another, nor shall he give away any property, or money belonging to me whatsoever.

"In testimony whereof, witness my signature, this —— day of December, 1930."

Pursuant to and by the authority of the above writing, appellee bought of John E. Chumney, a broker of

Louisville, Kentucky, two National Electric Power Company gold debentures for $1,847.22 and four Washington Gas & Electric first mortgage bonds for $3,850. The gold debentures were unsecured notes of the company, and the bonds of the Washington Gas & Electric Company were secured by mortgage on its property. Both of these companies were corporations, neither of which had been in operation or existence 10 years.

The contract between appellant and appellee was terminated by appellant in September, 1932, and at her direction appellee turned the estate over to the Fidelity & Columbia Trust Company, at which time the gold debentures above referred to, which cost $1,847.22, were worth only $105, and the Washington Gas & Electric bonds, which cost $3,850, were worth only $2,680, a difference of $2,912.22 on both. It is stipulated that, at the time of the purchase of the above securities, the gold debentures for which appellee paid $1,847.22 had a market value of $1,390 only, and the Washington Gas & Electric bonds for which he paid $3,850 had a market value of $3,080 only, and that appellee paid therefor the aggregate sum of $1,227.22 above their actual market value. This sum, plus the depreciation in market value between the time of the purchase and the time appellee turned the estate back to the appellant, aggregated a total loss of $2,912.22, and appellant brought this suit in the Jefferson circuit court to recover of appellee this sum.

The original petition alleged appellee's possession of appellant's estate or funds in a fiduciary capacity, and declared on a violation by defendant of section 4706, Kentucky Statutes, which, in so far as is pertinent hereto reads:

"*Investment of Funds by Fiduciary.*—That it shall be lawful for persons or corporations holding funds in a fiduciary capacity for loan or investment, to invest the same in real estate, mortgage notes or bonds or in such other interest bearing or dividend paying securities as are regarded by prudent business men as safe investments, and to make loans with such securities as collateral; but such funds shall not be invested in the bonds or securities of any railroad or other corporation unless such railroad or other corporation has been in operation more than ten years. * * *"

And, in addition to the alleged violation of the statute, supra, she also alleged that appellee negligently paid for these securities $1,227.22 in excess of their real value at the time of purchase.

On motion of appellee, defendant below, the court struck from the petition all averments, seeking to recover for violation of section 4706 of the Statutes, and left therein only the items based on allegations of negligence, which amounted to $1,227.22. Appellant thereupon tendered and moved to file an amended petition, reasserting in more detail her right of recovery under section 4706, to the filing of which defendant objected and the court refused to permit it filed.

Appellee filed his answer in two paragraphs, the first containing a history of his transactions pursuant to his power of attorney or contract and certain correspondence and events which transpired between himself and appellant and her attorney between the time of the termination of the contract and the filing of the suit. The second paragraph of the answer traversed the allegations of negligence and other material allegations of the petition. The court sustained the demurrer to the first paragraph of the answer, leaving only the traverse.

At the trial on November 1, 1934, appellant was permitted to file an amended petition, alleging in substance that appellee was negligent in investing her funds in these securities at all, and prayed a recovery for the difference between their purchase price and their market value on September 6, 1932, the date of their return by appellee to her, amounting to $2,912.22, with interest from that date.

The issues were completed and the evidence taken and the court entered judgment in favor of appellee, defendant below. Hence this appeal.

It is the contention of appellant that she is entitled to recover under either theory, i. e., on the grounds of negligence in making the purchases and/or under section 4706 of the Statutes. We will consider these questions in order named.

It is conceded that John E. Chumney, the broker of whom appellee purchased the securities, was a li-

censed, bonded broker. The fact that he was licensed by the commonwealth of Kentucky to engage in the brokerage business, and had executed bond for the proper transaction and conduct of such business, is at least strongly persuasive, if not prima facie evidence, of his good standing, unless appellee had personal knowledge or reliable information to the contrary. In addition to those facts, it is shown by the undisputed evidence of appellee that he made investigation and inquiry with respect to Chumney's reputation and standing as a broker, and the information he received was favorable, or at least he received no information tending to show that Chumney was not in good standing or had been guilty of frauds or other wrong conduct in his transactions as a broker. Appellant introduced a number of witnesses to show that Chumney's reputation as a broker was bad. A number of the witnesses testified in substance that Chumney's standing and reputation did not measure up to the reputation or information received by appellee, and one witness, Dunlap Wakefield, says that the reputation of Chumney in 1930 was bad. However, on cross-examination Wakefield admitted that this information as to Chumney's reputation was gathered from a transaction with Lyons & Co., but he did not know whether that transaction occurred in 1931, 1932, or 1933, either of which dates was after appellee had purchased the securities herein in question.

Wakefield also admitted that there was no moral turpitude involved in the transaction upon which he based Chumney's bad reputation. But it must not be overlooked that appellee was not an insurer of the reputation and integrity of the people with whom he invested appellant's money. He was charged with ordinary care only. It was also shown that in that community a purchaser of securities for investment usually consulted with and relied upon the advice of a broker in whom he had confidence, and relied upon such broker for information with respect to the advisability of making such investments. It seems that appellee followed this custom in making the investments herein in question. In the circumstances, we do not think appellee was guilty of negligence in his transaction with Chumney.

As to whether appellee is liable under the statute, supra, presents two questions, to wit: (1) Was appellee acting in a fiduciary capacity in the meaning of the

statute, or merely the agent of appellant? and (2) if acting in a fiduciary capacity, does the statute apply?

The writing under which appellee was acting was a simple power of attorney, which ordinarily, if not always, creates the relation of principal and agent rather than trustee and cestui que trust. Of course, there is a certain degree of trust and confidence demanded or expected of an agent, but this does not mean that an agent is a trustee or a fiduciary in contemplation of statutory trusts or other statutory fiduciaries. In C. J. vol. 2, sec. 11, p. 425, the rule which is supported by the great weight of authority is thus stated:

> "While agency is a trust or fiduciary relation demanding of the agent undivided loyalty and fidelity to the interests of the principal confided to his charge, it differs in many respects from any recognized class of trusts, although it may be difficult to define strictly, at all times, the line between a trustee and an agent. In the ordinary agency the title to any property involved, and usually to all the proceeds of the agency, remains in the principal, and the agent acts in the name of the principal, in a trust the legal title is in the trustee, and he acts in his own name. Agency may in general be revoked at any time; a trust can ordinarily be terminated only by the fulfillment of the purposes of the trust. It is the business of the agent to make contracts binding his principal to third persons; a mere trustee cannot render either the creator of the trust or the beneficiary liable to third persons. In this, as in the case of other relations that are sometimes difficult to distinguish from agency, the courts will construe the contract so as to give effect to the true intent of the parties, notwithstanding the name they may have given to their relation in the contract."

Under the power of attorney, appellee was vested with the right to make such investments as appellant could have made for herself; the only limitation of the power being that appellee should not in any way bind appellant as surety, guarantor, or indorser, for the accommodation of himself or another, nor give away any of her property. There is no contention that he violated any of these prohibitory provisions.

The complaint is directed to appellee's acts under his authority conferred upon him by virtue of the power of attorney. It is an elementary law of agency that, whatever lawful act a principal may do himself, he may have performed by an agent, and that the latter's performance of it will be as legally binding upon the principal as if performed by him in person. Mullins v. Commonwealth, 179 Ky. 74, 200 S. W. 9. The power of attorney conferred upon appellee the right to make such investments or purchase such securities, etc., as he, in the exercise of ordinary care and prudence, may have deemed proper, and he would be rendered liable to appellant for loss only on his failure to exercise such care. The rule with respect to liability of the agent to his principal for loss as a result of his investments is stated in 2 C. J. sec. 392, pp. 729, 730, as follows:

"(4) Agent to Lend or Invest. Where an agent is authorized to lend or invest money of his principal he must exercise reasonable skill and ordinary care and diligence, and will be liable for losses occasioned by his negligence, as in lending money on the unsecured obligation of the borrower, or on inadequate security, or on property subject to prior mortgages, liens, or other encumbrances, unless the principal expressly or impliedly releases him from liability for the loss. The agent may also become personally liable by a guaranty to the principal against loss, in which case he must make good his guaranty.

"Agent acting in good faith. But ordinarily the agent does not insure against losses due to honest mistakes or errors of judgment, and, if he has acted in good faith and with reasonable skill and ordinary care and diligence, he will not be liable for losses which the principal may sustain, as by reason of the insufficiency of the security, and, if he has invested money strictly in accordance with the terms of his agreement, he will not be liable if the investment results in loss. If an agent lends money upon property which is amply adequate security at the time the loan is made, he will not be liable for loss due to its subsequent depreciation in value; and, if a principal gives an agent money for purposes of speculation according to the

latter's discretion, and the agent acts in good faith, he will not be liable for losses due to errors of judgment."

It is our conclusion, therefore, that appellee was acting as agent for appellant, and, having concluded that there was no negligence shown, it follows that he is not liable to appellant for the losses resulting from his investment of her funds. However, if it be assumed that appellee was a fiduciary within the provisions of section 4706, Kentucky Statutes, we do not think that section has any application to this case.

That section of the statute has no application to fiduciaries when acting pursuant to authority of their principal or the testator, as the case may be. In construing this statute in the case of Trimble's Ex'x v. Lebus, 94 Ky. 304, 22 S. W. 329, 15 Ky. Law Rep. 85, it is held that the statute was intended to apply and control the general authority of a personal representative to sell and dispose of stocks and bond-paying dividends, but does not take from a testator the right to invest his executor with discretionary power to make such sales. See, also, to the same effect, Cromey, Trustee, v Bull, etc., 4 Ky. Law Rep. 787.

Without further elaboration on the cases, supra, it is sufficient to say that in our view the law as applied in those cases is conclusive of the case at bar, if appellee was a fiduciary in the meaning of the Statutes.

The judgment is affirmed.