John INGRAM, Appellant,

v.

William U. CATES, Executor of the Estate of Pius Ingram, Deceased, Appellee.

No. 2000–CA–002481–MR.

Court of Appeals of Kentucky.

April 19, 2002.

---

16. *Bickel v. Bickel,* Ky., 442 S.W.2d 575, 577 (1969); *Carnes, supra.*

17. *Kuprion v. Fitzgerald,* Ky., 888 S.W.2d 679, 684 (1994).

Len W. Ogden, Jr., Paducah, KY, for appellant.

David L. Hargrove, Weisenberger, Hargrove, & Foster, Mayfield, KY, for appellee.

Before COMBS, EMBERTON and TACKETT, Judges.

## OPINION

EMBERTON, Judge.

This case involves questions of law and fact related to alleged violations of fiduciary duties. William Cates, Executor of the will of Pius Ingram, filed this action alleging that John Ingram, as attorney-in-fact for Pius Ingram, wrongfully made gifts from funds owned by Mr. Ingram to himself and his sister. The trial court found that the claim was not time-barred and entered summary judgment in favor of Cates. We affirm in part, reverse in part and remand.

Cates and Pius Ingram became acquainted in the 1970s, and in 1988, Mr. Ingram, who at the time was in his eighties, for no stated monetary consideration, deeded his house and 18 acres to Cates and his wife, reserving for himself a life estate. Cates denies that he was obligated to perform certain tasks for Mr. Ingram, such as keeping the yard mowed, tending to Mr. Ingram's personal needs, accompanying him to the doctor, and assisting with other routine living chores as part of the consideration for the conveyance. However, there were affidavits submitted by those who provided care for Mr. Ingram stating that Mr. Ingram later expressed unhappiness with Cates because of Cates's failure to perform his part of the bargain. Also, in addition to the deed, Mr. Ingram executed a will in 1985 naming Cates as the primary beneficiary of his estate. And further, in 1989, he appointed Cates as his attorney-in-fact.

Later in 1989, Cates began moving Mr. Ingram from one nursing home to another, and there is evidence that during that time Cates did not visit or have contact with Mr. Ingram. At oral argument, however, counsel for Cates argued that Cates's withdrawal from Mr. Ingram's life resulted not from his loss of friendship or concern for Mr. Ingram, but from an effort to calm the turmoil that had developed since Mr. Ingram's nephew, Dr. John Ingram, became an active force in Mr. Ingram's affairs. In January 1990, Mr. Ingram, perceiving the changes in treatment by Cates as suggesting an attitude of neglect and uncaring on the part of Mr. Cates, revoked the power of attorney to Cates and granted his general power of attorney to Dr. Ingram. The granting instrument, among other powers, provided the power to "convey any ... personal property that I [Mr. Ingram] may now or hereafter own...." Subsequently, Dr. Ingram arranged for his uncle to live with Lia Wilson Huml, Dr. Ingram's sister, and Mr. Ingram's niece, where he lived from November 4, 1990, until January 5, 1993, when he was returned to a nursing home, where he died in October 1993.

Pursuant to the will, Cates was appointed executor on October 15, 1993. Asserting that Dr. Ingram had wrongfully used the power of attorney to divert a portion of Mr. Ingram's funds for his personal use, Cates requested an accounting from Dr. Ingram. Dr. Ingram refused and this action was commenced on January 30, 1995.

More specifically, the controversy concerns checks written by Dr. Ingram to pay his own personal bills and for the withdrawal of $12,500 from Mr. Ingram's funds to pay the balance on a note owed by Huml to Citizens Bank and Trust Company. The checks were written from Mr. Ingram's account to pay Dr. Ingram's personal bills during an eleven day period from April 29, 1991, to May 9, 1991, namely: $2,307.58 to Discover; $408.61 to Barnett Mortgage Company; $219.12 to Visa;

and, $22.63 to Florida Power and Light. Dr. Ingram does not deny that the checks were written, but contends that they were the result of confusion created by the bank by its sending the same color checks for his account and Mr. Ingram's. After discovering the mistake Dr. Ingram allegedly told Mr. Ingram of the problem. Mr. Ingram responded that because he appreciated all that Dr. Ingram had done for him, reimbursement was not necessary.

The $12,500 paid for Huml was also allegedly with Mr. Ingram's consent. In 1992, while Mr. Ingram was living with Huml, she was having difficulty making her mortgage payment. Mr. Ingram, who was paying $500 to $600 per month for room, board and care, allegedly directed Dr. Ingram to withdraw $12,500 from his account and pay the balance due on the note. The note was paid in full on May 11, 1992. There is no written authorization from Mr. Ingram directing or consenting to any of the disputed transactions.

■ Dr. Ingram contends that Cates's action is time-barred. Initially, he argues that under KRS[1] 413.180(1), Cates was required to bring the action within one year of his qualification as executor. Dr. Ingram's reliance on that statute is misplaced. The statute does not, as he suggests, require any action to be filed within one year of appointment and is not a statute of limitations. It simply extends the statute of limitations where it has expired after the date of death to one year after the qualification of the personal representative.[2] Thus, only if the time for commencement of the action expired within

one year of Mr. Ingram's death would that statute have relevance.

■ Dr. Ingram argues also for the application of KRS 386.735, which applies to trusts. It is not applicable for several reasons. A power of attorney creates a form of agency.[3] Unlike a trustee who holds property for the benefit of the trust, an attorney-in-fact generally holds no legal title to the grantor's property. It is the purpose of the attorney-in-fact to bind his principal to third persons while a mere trustee cannot obligate the creator of the trust or the beneficiary to third persons.[4] Indeed, unlike a trust beneficiary who has standing to assert a claim for breach of fiduciary duties while the grantor is alive, it is debatable whether standing exists for a potential beneficiary of the grantor of a power of attorney to claim breach of fiduciary duties. During the life of the grantor, the right of a potential beneficiary is only an expectancy.[5]

Dr. Ingram's final contention is that this is an action for the taking or detaining of personal property required to be commenced within two years from the time the cause of action accrued.[6] Again, Dr. Ingram has erroneously characterized the nature of this action. It is an action for breach of a fiduciary duty owed by Dr. Ingram to Mr. Ingram. The essence of the claim is not that Dr. Ingram took property but that he exercised the power of attorney for his own benefit and in violation of his fiduciary duty.

■ Also, we reject Cates's contention that KRS 413.090, the fifteen-year statute

---

1. Kentucky Revised Statutes.

2. *Halcomb v. Cornett*, 146 Ky. 339, 142 S.W. 686 (1912).

3. *Moore v. Scott*, Ky.App., 759 S.W.2d 827 (1988).

4. *See Reily v. Fleece*, 259 Ky. 330, 82 S.W.2d 341 (1935).

5. *See Priestley v. Priestley*, Ky., 949 S.W.2d 594 (1997), and cases cited therein.

6. KRS 413.125.

of limitations for a contract, is applicable. The action is not one for breach of contract but rather for the breach of the fiduciary duty created by the power of attorney document.

■ The parties have attempted to characterize this action into various technical legal categories. It is not an action for breach of contract, not for the taking of property, nor an action arising from a breach of duties as a trustee. It is simply an action filed by Cates, as executor of Mr. Ingram's will, for breach of fiduciary duties by the attorney-in-fact, Dr. Ingram. There is no specific statutory provision providing a statute of limitations, and we therefore agree with the trial court that KRS 413.120(7), providing a five-year limitation for actions not arising on contract and not otherwise enumerated, governs. We do not pass on the question as to when the right of action accrues since all the acts complained of occurred within five years of the filing of the action.

■ The trial court found that there were no material issues of fact, and pursuant to *Steelvest v. Scansteel Service Center*,[7] entered summary judgment in favor of Cates. In *Wabner v. Black*,[8] the court refused to adopt a strict rule of law prohibiting attorneys-in-fact from making gifts to themselves without explicit written authorization by the grantor pursuant to a durable power of attorney. Instead, the court adopted an "utmost good faith" standard to be used to judge the acts of the attorney-in-fact. If determined to be within the exercise of authority granted by the power of attorney, then whether the attorney-in-fact acted with utmost good faith becomes a jury question.[9]

The power of attorney in *Wabner* contained a specific provision giving the attorney-in-fact power "to cash any certificate of deposits which I own or to change and redesignate the ownership thereof in his[her] sole discretion." Thus, the court held, the transfer of assets by the attorney-in-fact into an account, naming herself and the grantor as joint owners, was clearly within the grant of authority. Cates contends, and the trial court apparently agreed, that the *Wabner* case is distinguishable from the present case and that no jury question is presented.

■ The construction of a power of attorney is a question of law for the court.[10] Here, the power of attorney is not as specific as that in *Wabner*. It instead grants a general power to Dr. Ingram to "convey any personal property that I now or hereafter own...." It is an unlimited power of attorney authorizing Dr. Ingram to make any conveyance of personal property. It is undeniable that the power of attorney did not specifically bestow upon Dr. Ingram the power to make a gift to himself or to another. Even so, it is clear that the general power to convey any personal property, if done in utmost good faith, permits these specific transfers. We know of no rule of law requiring that a power of attorney specifically delineate each and every transaction the attorney-in-fact is authorized to perform.

Cates points out the general rule of construction that when a power of attorney delegates authority to perform specific acts and also contains general words, the powers of attorney are limited to the particular acts authorized.[11] In this case,

---

7. Ky., 908 S.W.2d 104 (1995).

8. Ky., 7 S.W.3d 379 (1999).

9. *Id.* at 382.

10. *Hackworth v. Hastings Industrial Company*, 146 Ky. 387, 142 S.W. 681, 682 (1912).

11. *Harding v. Kentucky River Hardwood Company*, 205 Ky. 1, 265 S.W. 429 (1924).

however, the power of attorney contained general terms without limitation and the obvious purpose was to give Dr. Ingram authority to handle and transact all financial affairs as agent for Mr. Ingram.

Citing *Deaton v. Hale*,[12] the court in *Wabner* explained the burden on the attorney-in-fact:

> An attorney-in-fact, one acting under a Power of Attorney, must account for any and all property, real or personal, that is received by him from or for his principal. The accounting must be for all property that is received by him while acting in his official capacity or otherwise. We do not mean to say, and we do not hold, that an agent operating in a fiduciary capacity, such as in the instant case, is liable for restoration or reimbursement for all properties received by him from the principal or from whatever source. What we are saying is that the agent does have the responsibility of explaining to the satisfaction of the Court what disposition was made of the properties. The agent is required to go forward with an explanation when proof is introduced showing that the property was in the hands of the agent. The burden of going forward with the proof so as to explain the disposition of any and all properties received by the agent is then with him. The issue thereby presented is one of fact to be decided by the court or by a jury, as the case may be.[13]

Dr. Ingram admits to the payment of personal bills from Mr. Ingram's account and payment of Huml's mortgage from that account. Thus, Cates argues, the trial court correctly ruled as a matter of law that he was entitled to a judgment. Although we agree that there is no dispute the funds were withdrawn, there is disagreement as to whether Dr. Ingram did so with the consent and approval of Mr. Ingram.

The final issue is whether Dr. Ingram, because he served as attorney-in-fact from January 1990, until October 1993, is entitled to a fee for his services. He admits there was no express contract between him and Mr. Ingram that Dr. Ingram would be paid and the court is unwilling to infer that such existed. Certainly, family members and other close associates of elderly people render such services daily without compensation. Whether it is out of gratitude that Mr. Ingram agreed to payment of Huml's mortgage and Dr. Ingram's personal bills from Mr. Ingram's account can be resolved by evidence presented to the jury when determining Dr. Ingram's good faith. It is not a basis for the court to find an agreement for compensation where none otherwise exists.

The judgment is reversed and this case is remanded for trial on the issue of whether Dr. Ingram acted with the utmost good faith in exercising his powers as attorney-in-fact.

ALL CONCUR.

---

12. Ky., 592 S.W.2d 127 (1979).

13. *Id.* at 381.