NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0385n.06

No. 14-6188

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 29, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PINE TREE VILLA, LLC, d/b/a Regis Woods Care and Rehabilitation Center; SUNBRIDGE HEALTHCARE, LLC; and GENESIS HEALTHCARE, LLC, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| CARL R. BROOKER, as Administrator of the Estate of Helen Elfrig, | ) ) | |
| Defendant-Appellee. | | |

BEFORE:     DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   The dispositive question in this appeal is whether the "unlimited" durable power of attorney (POA) that Helen Elfrig granted to Joy Brooker as her attorney-in-fact in 2007 authorized Brooker to enter a voluntary arbitration agreement with Regis Woods Care and Rehabilitation Center, the nursing home that Elfrig entered in 2010.  Although the POA purported to give Brooker "maximum power" to do any act that Elfrig could do, it expressly conferred authority only "to make any health decisions on [her] behalf."  After Elfrig died in the Regis Woods facility, Carl Brooker, the administration of her estate, brought suit in state court against the proprietors for negligence and wrongful death.  In response, the plaintiffs filed this action in federal district court to enforce the arbitration

agreement under the Federal Arbitration Act (FAA). Citing *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), the district court granted the defendant's motion to dismiss, holding that under Kentucky state law, when the scope of authority in a POA nominally provides for unlimited powers to act but expressly identifies certain acts the attorney-in-fact can undertake, authority is limited to those expressly identified acts. The district court noted that Elfrig's POA expressly granted Joy Brooker the authority only to make health decisions and concluded, therefore, that the POA did not authorize entry into an arbitration agreement that was not a precondition of Elfrig's admission to the nursing home. We agree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Helen Elfrig executed a Durable Unlimited Power of Attorney naming Joy Brooker as her legal representative. The entirety of the POA reads as follows:

> I, Helen Agnes Elfrig, residing at 1121 Beecher Street, City of Louisville, State of Kentucky, grant an unlimited durable power of attorney to Joy Anita Brooker, residing at 189 McGruder Lane, City of Shepherdsville, State of Kentucky, to act as my attorney-in-fact.
>
> I give my attorney-in-fact the maximum power under law to perform any acts on my behalf that I could do personally, including the power to make any health decisions on my behalf. My attorney-in-fact accepts this appointment and agrees to act in my best interest as she considers advisable. This power of attorney may be revoked by me at any time and shall endure after my death. This power of attorney shall not be affected by my present or future disability or incapacity.

Upon Elfrig's admission to Regis Woods in October 2010, Joy Brooker signed an arbitration agreement on Elfrig's behalf. The agreement provided that any disputes arising out of Elfrig's residence at Regis Woods would be submitted to binding arbitration. In executing it, "the undersigned parties . . . underst[ood] that each had waived his/her or its rights to a trial, before a judgment and/or a jury. . . ." Entry into the agreement was explicitly voluntary—it

provided that if Elfrig did not accept it, she would still be allowed to live in and receive services at the nursing home.

A year later, while a resident at Regis Woods, Elfrig died as the result of complications of a fall. Defendant Carl Brooker, the administrator of Elfrig's Estate, brought suit in state court against plaintiffs Pine Tree Villa LLC, Sunbridge Healthcare LLC, and Genesis Healthcare Corporation, alleging that Elfrig's death stemmed from the plaintiffs' negligence in her care and treatment; the action also asserted a claim of wrongful death. In response to this suit, the plaintiffs filed an action in the district court to enforce the arbitration agreement under the FAA. Carl Brooker moved to dismiss the complaint for lack of jurisdiction and failure to state a claim. The plaintiffs then moved to compel arbitration and enjoin the state court action.

After determining that, under *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), *cert. denied*, 133 S.Ct. 1996 (2013), Elfrig's POA did not vest Joy Brooker with the authority to enter into an arbitration agreement and, therefore, that the agreement was not enforceable against the Elfrig Estate, the district court granted Carl Brooker's motion to dismiss and denied the plaintiffs' motion to compel arbitration and enjoin the state court action. The court entered judgment in Carl Brooker's favor and dismissed the complaint with prejudice.

## DISCUSSION

We review *de novo* a district court's dismissal of claims, both for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Denial of a motion to compel arbitration is also reviewed *de novo*. *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 716 (6th Cir. 2012).

On appeal, the plaintiffs argue that the district court erred in concluding that Elfrig's POA did not vest Joy Brooker with authority to enter into the arbitration agreement. They contend that *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), *cert. denied*, 133 S.Ct. 1996 (2013), is inapplicable to Elfrig's POA because that POA, unlike the one at issue in *Ping*, granted Joy Brooker unlimited power to act on Eflrig's behalf.

In *Ping*, the Kentucky Supreme Court reviewed a POA that authorized the attorney-in-fact "to do and perform any, all, and every act and thing whatsoever requisite and necessary to be done . . . as [the principal, Donna Ping][1] might or could do if personally present, including but not limited to the following . . . ." 376 S.W.3d at 586. The enumerated acts concerned finances and medical care. *Id.* at 586-87. The POA noted, however, that the enumerated acts were "not intended to, nor [did they] limit or restrict, the general and full power herein granted to [Ping's] said attorney-in-fact." *Id.* at 587.

Despite the POA's repeated emphasis that it granted the attorney-in-fact authority exceeding that expressly provided for in the document, the Kentucky Supreme Court found that the POA did not, in fact, authorize the attorney-in-fact to waive Ping's constitutional right to trial by entering into a voluntary arbitration agreement with a nursing home. *Id.* at 593. The court construed the POA's grant of authority as limited to the enumerated acts; reading the POA's expressions of general authority as providing the attorney-in-fact with unlimited power to act on the principal's behalf would, the court observed, render "the specific financial and health-care provisions superfluous, contrary to the fundamental rule that a written agreement generally will be construed 'as a whole, giving effect to all parts and every word in it if possible.'" *Id.* at 592 (quoting *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986)). Because entering the

---

[1] *Ping*'s analysis was based on rules of agency because "[a] power of attorney is a written, often formally acknowledged, manifestation of the principal's intent to enter into . . . a relationship [wherein the agent acts on the principal's behalf and subject to his control] with a designated agent." 376 S.W.3d at 591.

arbitration agreement was not a precondition to Ping's admission into the nursing home, the court determined that the agreement was not a health-care decision and, thus, was not within the purview of the powers granted by the POA. *Id.* at 593.

Here, the district court properly followed *Ping*'s instruction by concluding that Elfrig's POA did not vest Joy Brooker with the authority to bind Elfrig and her estate to a voluntary arbitration agreement because the POA expressly authorized Brooker only to make health decisions on Elfrig's behalf. The plaintiffs' challenge to the district court's ruling mischaracterizes the POA in *Ping* as more limited than Elfrig's POA. They insist that Elfrig's POA expressly granted to Joy Brooker *unlimited* authority because it provided her "the maximum power under law to perform any acts on [Elfrig's] behalf that [Elfrig] could do personally." Based on that language, they contend that Brooker was authorized to enter into the arbitration agreement because Elfrig could have done so. But this argument ignores the fact that the *Ping* POA contained nearly identical language, giving the attorney-in-fact "full and complete power and authority to do and perform any, all, and every act and thing whatsoever requisite and necessary to be done . . . as [Ping] might or could do if personally present." *Ping*, 376 S.W.3d at 590–91. Further, as the district court correctly noted, the *Ping* POA contained far broader expressions of general authority than Elfrig's does—it declared Ping's intention to grant the attorney-in-fact "full and general power and authority to act on [Ping's] behalf"; directed that its language "be liberally construed with respect to the power and authority" granted to give effect to Ping's intention; and emphasized that its enumeration of specific acts did not "limit or restrict . . . the general and full power herein granted. . . ." *Id.* at 587. Elfrig's POA includes no comparable disclaimers.

Plaintiffs further attempt to distinguish *Ping* by arguing that the *Ping* court's construction of the POA turned on that POA's authorization of any acts "requisite and necessary to be done" and "required to be done on [Ping's] behalf." They argue that this language, in and of itself, limited the *Ping* attorney-in-fact's authority to the acts enumerated in the POA. This argument, however, results from a misreading of *Ping*. Although the Kentucky Supreme Court did acknowledge that the *Ping* POA's general expressions of authority were, by their own terms, limited to acts necessary and required to give effect to expressly authorized actions, the court's construction of the POA was based on its recognition that the expressly authorized transactions in the POA alone established the scope of authority granted by the document. *Id.* at 592. *Ping*'s holding was not dependent on the existence in the POA of language limiting its grant of authority to necessary or required acts. It was instead a reflection of the Kentucky Supreme Court's cautious approach to POAs that do not expressly authorize the attorney-in-fact to make decisions that may have significant legal consequences for the principal, such as waiver of his or her constitutional right to trial. *Id.* at 592-93. As *Ping* repeatedly observes, this approach is fully endorsed by the Restatements of Agency. *Id.* (noting the consistency of the rule with the treatment of general and specific authorizations of agency in the Restatement (Second) of Agency and of consequences of acts for principal in the Restatement (Third) of Agency).

The plaintiffs ultimately ask this court to find that Elfrig's POA granted Joy Brooker unlimited authority to enter into any and all possible transactions, not merely those related to Elfrig's healthcare. They assert that the clause in Elfrig's POA authorizing Brooker to make Elfrig's health decisions was included only because of the demands of Kentucky Revised Statute

§ 311.631(1)(b),[2] and cannot be read as a limit on Brooker's power. But once again, this assertion ignores the *Ping* POA's nearly identical clause delineating its authorized acts—which included those related to Ping's healthcare—and that the Kentucky Supreme Court reached an entirely different result from the one the plaintiffs urge here. It also attempts to argue as indisputable Elfrig's intent in including the health decisions clause, when Elfrig's intent actually presents a question of fact on which no fact-finding has been conducted. Even more fatal to plaintiffs' argument here, however, is that Kentucky law does not appear to provide for unlimited POAs. The one case plaintiffs cite for the proposition that Kentucky does recognize such POAs, *Ingram v. Cates*, 74 S.W.3d 783 (Ky. App. 2002), did not actually concern a truly unlimited POA. The POA at issue in *Ingram* granted the attorney-in-fact a "general power" to make any conveyance of personal property. 74 S.W.3d at 787. A "general power" to conduct transactions that fall within a category specified by the POA is not equivalent to the general power to conduct any and all possible acts on the principal's behalf, including those unnamed in the POA and unnecessary to the effectuation of those acts that are expressly identified in the POA, as plaintiffs argue for here. It is clear, then, that the plaintiffs' interpretation of Elfrig's POA as providing for unlimited authority to do anything more than that necessary to making health decisions is contrary to Kentucky law.

The remaining cases cited by the plaintiffs—cases distinguishing *Ping*—merely underscore how apposite *Ping* is to this case and how distinct Elfrig's POA is from POAs that do provide for general authority to contract. In *Oldham v. Extendicare Homes, Inc.*, No. 5:12-cv-00199, 2013 WL 1878937 (W.D.Ky. May 3, 2013), for example, the court found that the POA

---

[2] KRS § 311.631(1)(b) provides that an attorney-in-fact named in a durable power of attorney will be authorized to make healthcare decisions on behalf an adult patient lacking decisional capacity who has not executed an advance directive, if the durable power of attorney specifically includes authority for health care decisions. KRS § 311.631(1)(b).

there did authorize the attorney-in-fact to execute an arbitration agreement because, unlike in *Ping*, the POA before it expressly granted the attorney-in-fact authority "to draw, make and sign any and all checks, contracts, or agreements." 2013 WL 1878937 at *5 (internal quotation marks omitted). In *GGNSC Vanceburg, LLC v. Taulbee*, No. 5:13-cv-71, 2013 WL 4041174 (E.D.Ky. Aug. 7, 2013), the court granted a motion to compel arbitration based upon an arbitration agreement signed by an attorney-in-fact because the POA at issue, much like the POA in *Oldham* and significantly unlike the one in *Ping*, explicitly authorized the attorney-in-fact to "make contracts" and "draw, make and sign in [the principal's] name any and all checks, promissory notes, contracts, or agreements." 2013 WL 4041174 at *8 (internal quotation marks omitted). *Oldham* and *Taulbee* thus lend no support to the plaintiffs' claim that Elfrig's POA, which is devoid of any such provisions authorizing Joy Brooker to contract on Elfrig's behalf, allowed for Joy Brooker to enter the voluntary arbitration agreement.

Because the district court correctly determined that, under *Ping*, Elfrig's POA did not authorize Joy Brooker to enter into the arbitration agreement, it did not err in granting Carl Brooker's motion to dismiss and denying plaintiffs' motion to compel arbitration.

Nor do we find any merit in the plaintiffs' argument that in applying *Ping* to Elfrig's POA, the district court created a rule that is hostile to arbitration and, thus, preempted by the FAA. The district court's refusal to enforce the arbitration agreement against Elfrig's estate was based not on the arbitral nature of the agreement but, instead, on the fact that entry into the agreement was voluntary and that the POA did not provide a general authority to Joy Brooker to contract on Elfrig's behalf. As the court in *Ping* noted, "where an agreement to arbitrate is presented to the patient as a condition of admission to the nursing home, courts have held that the authority incident to a health-care durable power of attorney includes the authority to enter such

an agreement." *Ping*, 376 S.W.3d at 593 (citations omitted). But, "where, as here, the arbitration agreement is not a condition of admission to the nursing home, but is an optional, collateral agreement, courts have held that the authority to choose arbitration is not within the purview of a health-care agency, since in that circumstance agreeing to arbitrate is not a 'health care' decision." *Id.* (citations omitted).

For the reasons set out above, we AFFIRM the district court's judgment.