NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0029n.06

No. 16-5209

FILED
Jan 13, 2017
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PREFERRED CARE OF DELAWARE, INC., dba Preferred Care, Inc.; RICHMOND HEALTH FACILITIES-MADISON, LP, dba Madison Health & Rehabilitation Center; PREFERRED CARE PARTNERS MANAGEMENT GROUP, LP; KENTUCKY PARTNERS MANAGEMENT, LLC, | ) ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| SIMM VANARSDALE, as Administrator of Estate of, Judith VanArsdale, | ) ) | |
| Defendant-Appellee. | ) ) | |

BEFORE:    MERRITT, BATCHELDER, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  This case involves the propriety of *Colorado River* abstention in a federal lawsuit brought under the Federal Arbitration Act.  After Simm VanArsdale's mother died in the care of a nursing home run by Preferred Care of Delaware, he brought suit in state court on behalf of her estate, asserting a number of state-law claims of negligence as well as a claim for wrongful death.  While his mother was still alive, VanArsdale had assumed authority over her financial and health care decisions through a general durable power-of-attorney agreement, and, acting under that authority, had signed an optional arbitration agreement on her behalf with Preferred Care.  Pointing to that agreement, Preferred Care answered in state court

that VanArsdale could not bring the estate's claims against it in state court, and was instead required to pursue them in arbitration. Meanwhile, Preferred Care also filed suit in federal district court seeking an order to compel arbitration pursuant to Section 4 of the Federal Arbitration Act and a preliminary injunction against VanArsdale to enjoin him from proceeding with the state suit. While those motions were being briefed in the federal district court, however, the state court granted summary judgment on the arbitrability issue, concluding that under Kentucky law VanArsdale lacked authority to enter into the arbitration agreement on his mother's behalf and that the agreement was therefore unenforceable. Not long after, the federal district court denied Preferred Care's request for an injunction, and later, citing *Colorado River Water Conservation District v. United States*, 424 U.S. 820 (1976), declined to exercise jurisdiction, in light of the state court's intervening ruling. Preferred Care challenges both of those decisions on appeal. Because the district court correctly determined that the state and federal actions were parallel, and that the relevant factors under *Colorado River* counseled abstention, it properly decided to abstain in this case.

I.

Two years after Judith VanArsdale became a resident of Madison Nursing & Rehabilitation Center, a nursing facility in Richmond, Kentucky, Preferred Care of Delaware assumed responsibility for operations at the site. As a part of that transition Preferred Care asked the residents or their legal representatives to sign additional paperwork, including the optional Alternative Dispute Resolution Agreement ("ADR agreement") that is the subject of this suit. That agreement required arbitration for:

> any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Center that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Kentucky and shall

include, but not be limited to, all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death and any alleged departure from any applicable federal, state, or local medical, health care, consumer or safety standards.

Ms. VanArsdale did not execute the agreement herself, however. That was instead left to her son, Simm VanArsdale ("VanArsdale"), who had assumed authority over his mother's affairs pursuant to a general durable Power of Attorney agreement. That agreement laid out a series of grants of authority broadly covering her financial and medical interests, including in its first section a general and two more specific provisions:

> 1. GENERAL GRANT OF POWER: To exercise or perform any act, power, duty, right or obligation whatsoever that I now have or may hereinafter acquire relating to any person, matter, transaction or property, real or personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the following specifically enumerated powers. I grant to my attorney full power and authority to do everything necessary in exercising any of the powers hereinbelow granted as fully as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my attorney shall lawfully do or cause to be done by virtue of this power of attorney and the powers herein granted.
>
> A. POWERS OF COLLECTION AND PAYMENTS: To forgive, request, demand, sue for, recover, collect, receive, liquidate, and hold all such sums of money, debts due, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devises, notes, interest, stocks, certificates of deposit, retirement, social security, insurance and other contractual benefits and proceeds, annuities, all documents of title, all property, real or personalty [sic], tangible or intangible property and property rights, and demands whatsoever, liquidated or unliquidated, now or hereafter owned by me, or due and owing, payable or belonging to me or in which I have or may hereafter acquire an interest; to have, use, and take lawful means and equitable and legal remedies and proceedings in my name for the collection and recovery thereof, and to adjust, sell, compromise and agree for the same; and to execute and deliver for me, on my behalf, and in my name, all endorsements, releases, receipts, or other sufficient discharges for the same.
>
> . . . .

H. BUSINESS INTERESTS. To conduct or participate in any lawful business of whatever nature for me and in my name, including the authority to request, demand, sue for, recover, collect, receive, and hold all such sums of money, debts due, commercial paper, checks, drafts, accounts, and deposits of said business; to have and use lawful means and equitable and legal remedies and proceedings in my name for the collection and recovery thereof; to elect or employ employees, officers, directors, and attorneys; to carry out the provisions of any agreement for the sale of any business interest or the stock therein; and to exercise voting rights with respect to stock, either in person or by proxy; and to perform any and all other acts necessary in the operation of said business.

A separate general grant of authority, not included under this first "general grant of power," specifically addressed Ms. VanArsdale's medical care. Like the "general grant" of the first section, this section also carried its own general authorization for VanArdsale "[t]o make any and all health care decisions for [Ms. VanArsdale]," an authority that "includes, but is not limited to," eight specific provisions dealing in various aspects of Ms. VanArsdale's health care.

In October 2015, several months after Ms. VanArsdale's death, VanArsdale, acting as administrator of his mother's estate, filed suit against Preferred Care in Kentucky state court asserting various state law negligence claims as well as a claim for wrongful death. A month later Preferred Care entered its answer in state court, defending on the ground, among others, that VanArsdale was bound by the ADR agreement to arbitrate his claims against Preferred Care. That same day, Preferred Care also filed suit in federal district court seeking an order under Section 4 of the Federal Arbitration Act ("FAA") to compel VanArsdale to arbitrate his claims against Preferred Care.

A week later VanArsdale returned to state court to file a motion for judgment on the pleadings, arguing that the arbitration agreement should be declared unenforceable under Kentucky law. Preferred Care, after entering its objection to that motion in state court, then sought a preliminary injunction from the federal district court to prevent VanArsdale from

proceeding any further with his state suit until the district court could rule on the enforceability of the ADR agreement. VanArsdale, in turn, asked the district court instead to dismiss the federal action, arguing, among other things, that the district court lacked authority under the Anti-Injunction Act to enjoin the state suit, and that under *Colorado River* it was appropriate for the court to abstain until the state proceedings had ended. As these motions were being briefed in the district court, however, the state court granted VanArsdale's motion for summary judgment, noting that "Ms. Judith VanArsdale's power of attorney did not give anyone sufficient authority to sign an arbitration agreement waiving her constitutional right to a jury trial, pursuant to *Ping v. Beverly Enterprises, Inc., et al*, 376 S.W.3d 581 (KY 2012), and *Extendicare Homes, Inc. v. Belinda Whisman*, 2013-SC-000426-I."[1]

Shortly after the state trial court ruled on Preferred Care's motion, the federal district court issued the first of the two orders at issue in this case, denying Preferred Care's request for an injunction. Although Preferred Care had appeared to argue that an injunction was proper under the Anti-Injunction Act because it was "necessary to aid the [district court's] jurisdiction, particularly in light of federal concerns with respect to the Federal Arbitration Act," the district court concluded that the Act's limited exceptions would not support an injunction in this case.

A month later the district court entered the second of the two orders in this case, abstaining under *Colorado River* from any further proceedings until the state case came to a

---

[1] Preferred Care has appealed this ruling to the Kentucky Court of Appeals, which that court held in abeyance pending finality in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015). Once *Whisman* reached finality, the appeal was returned to the court's active docket, and, as of this writing, has yet to be disposed of. However, the United States Supreme Court has now granted certiorari in *Whisman*, and will hear the case sometime this term. *See Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015) *cert. granted sub nom. Kindred Nursing Centers, et al. v. Clark, Janis E., et al.,* __ S.Ct. __, 2016 WL 3617216 (U.S. Oct. 28, 2016) (No. 16-32).

close. Before reaching the abstention analysis, however, the district court drew two preliminary conclusions. First, after noting that the state court had already ruled the arbitration provision unenforceable, the district court added, in a footnote:

> Based on the Kentucky Supreme Court's decision in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012) along with the Sixth Circuit's decisions in *Richmond Health Facilities, et al. v. Nichols*, No. 15-5062, 2016 WL 192004 (6th Cir. Jan. 15, 2016) and *Pine Tree Villa, LLC v. Brooker*, 612 F. App'x 340 (6th Cir. 2015), this Court agrees.

The court further noted, however, that it agreed with Preferred Care that "since no final judgment has issued in state court, neither res judicata nor issue preclusion applies, and this court is not bound by the state court's decision."

Despite these conclusions, the district court nevertheless "deem[ed] it appropriate to determine whether *Colorado River* abstention" was warranted in this case, ultimately concluding that it was under the eight-factor test articulated in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). As to the threshold determination of whether the state and federal actions were parallel, the court concluded that they were, given that "[t]he parties are identical, save one—one of two nursing home administrators" and that there was "certainty that the state litigation, if seen through to its conclusion, will dispose of all claims presented in the federal case." *Preferred Care of Delaware, Inc. v. VanArsdale*, 152 F.Supp.3d 929, 931 (E.D. Ky. 2016). Turning to the eight factors themselves, the court found that the first two—whether the state court had taken jurisdiction over property, and the convenience of the respective forums—weighed against abstention, as the state court had not appeared to assume jurisdiction over any property, and the state and federal courts sit only twenty miles apart. *Id.*

Each of the remaining six factors, however, the district court saw as favoring abstention. The court concluded that the third and "paramount" factor in *Colorado River* itself—the interest in avoiding piecemeal litigation resulting in duplicative or conflicting state and federal proceedings—"favor[ed] strongly toward abstention." *Id.* Likewise the court found that the fourth factor—the order in which jurisdiction was obtained—favored abstention because "VanArsdale filed his complaint in state court approximately one month before Preferred Care and the other plaintiffs filed theirs [in the district court]." *Id.* The court saw the fifth factor—as to the source of governing law—as also favoring abstention, reasoning:

> While the Federal Arbitration Act "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Richmond Health Facilities v. Nichols*, No. 15-5062, 2016 WL 192004, *2 (6th Cir. Jan. 15, 2016) (citations omitted). In determining the enforceability of an arbitration agreement, we apply state law of contract formation. *Id.* "When it comes to state laws applicable only to arbitration provisions, however, the FAA preempts those state laws." *Id.* (citations and alterations omitted). In *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), the Kentucky Supreme Court held that a nursing home resident's daughter did not have authority to enter into an arbitration agreement based on a "general" power of attorney that referred exclusively to property and finances. In *Pine Tree Villa, LLC v. Brooker*, 612 F. App'x 340, 345 (6th Cir. 2015), the Sixth Circuit concluded that *Ping* was not hostile to arbitration and, thus, was not preempted by the FAA. [FN2] The court distinguished *Ping* from a case in which the agent did have authority to agree to arbitration because, for example, the POA authorized the agent "to draw, make and sign any and all checks, contracts, or agreements." *Id.* at 345 (citing *Oldham v. Extendicare Homes, Inc.*, No. 5:12-cv-199, 2013 WL 1878937 (W.D. Ky. May 3, 2013)), *see also GGNSC Vanceburg, LLC v. Taulbee*, No. 5:13-cv-71, 2013 WL 4041174, *8 (E.D. Ky. Aug. 7, 2013) (attorney in fact was explicitly authorized to "make contracts" and "draw, make and sign . . . all checks, promissory notes, contracts, or agreements."). Because the FAA does not preempt *Ping*, and state law applies to the enforceability of the arbitration agreement, this factor weighs in favor of abstention.
>
> [FN2. While *Nichols*, No. 15-5062, 2016 WL 192004, *2 (6th Cir. Jan. 15, 2016), focused on a patient's inability to bind her executrix to arbitration of wrongful death claims, the Sixth Circuit reiterated that *Ping* is not preempted by the FAA.]

*VanArsdale*, 152 F.Supp.3d at 931-32. As to the sixth factor, the court concluded that, because the "enforceability of the arbitration is an issue of state law," there was "no indication that the state court cannot or will not adequately protect [Preferred Care's] interests going forward." *Id.* at 932. The court likewise found that the progress of the state-court proceedings, which the court assumed "ha[d] been progressing in the usual manner," counseled abstention. *Id.* Finally, with respect to the "presence or absence of concurrent jurisdiction," the district court concluded that, "as it appears that this matter may be settled more expeditiously in state court, this court is under no compulsion to exercise [its] jurisdiction." *Id.* (internal quotation marks and citation omitted).

The court accordingly stayed the federal action pending the conclusion of the state suit, and dismissed the remaining motions as moot. *Id.* Preferred Care now appeals.

II.

The crux of this case is whether the district court properly abstained under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). Because the state and federal actions were sufficiently similar to count as parallel, and because, with a judgment as to the enforceability of the ADR agreement already entered in state court, five of the latter six factors under *Moses H. Cone*'s eight-factor test weigh in favor of abstention in this case, abstention was indeed appropriate. Reviewed de novo, *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (citing *Traughber v. Beauchane*, 760 F.2d 673, 676 (6th Cir. 1985)), the district court's decision to abstain was therefore proper.

First, as to the threshold question, the federal and state suits are indeed similar enough to qualify as parallel actions for the purposes of *Colorado River* abstention. Even though under *Colorado River* a district court may abstain from exercising its jurisdiction in deference to a state

court proceeding only where the two actions are deemed "parallel," this court has never held that only a perfect, or even near-perfect, symmetry of parties and causes of action would satisfy this requirement. *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998). On the contrary, so long as "the parties are substantially similar," and the claims raised in both suits are "predicated on the same allegations as to the same material facts," the two actions will come close enough to count as parallel. *Id.* In this case, where the parties are identical save for two defendants in the state action excluded from this federal counterpart, and where both suits turn on the same legal question—whether the ADR agreement requires VanArsdale to arbitrate his claims against Preferred Care, based on the same power of attorney—these two factors are clearly met. Even if, as Preferred Care argues, the state suit includes parties and claims beyond those in the federal suit, this court has nonetheless held that such differences will not upset an otherwise substantial symmetry between a federal and state action. *Romine*, 160 F.3d at 340. Despite their differences, then, the two actions are similar enough to satisfy the threshold requirement under *Colorado River* that they be parallel.

Preferred Care, arguing that parallelism is nevertheless unmet here, directs this court to two decisions of other circuits—*American Family Life Assurance Co. v. Biles*, 714 F.3d 887 (5th Cir. 2013) and *R. J. Griffin & Co. v. Beach Club II Homeowners Association*, 3 F. App'x 43 (4th Cir. 2001) (per curiam)—each involving a party seeking to compel arbitration in federal court while engaged in a related action in state court. But these cases, however superficially similar, hardly bear out the analogy that Preferred Care asks this court to draw. Although it is true that in those cases the courts concluded that the actions were not parallel and thus that abstention was inappropriate, Preferred Care disregards a critical distinction between those cases and its own: that in neither of these cases was the state court also considering an essentially identical claim

concerning the enforceability of the underlying arbitration agreement.[2]   That distinction, however, makes all the difference in this case, for without that kindred claim the two actions here would indeed lack any point of legal commonality—any parallelism under *Colorado River*—at all.   Because neither case, then, squarely addresses the circumstances here, they offer little comfort for Preferred Care's claim that parallelism is lacking in this case.

Turning to the propriety of abstention under *Colorado River*, because five of the latter six factors of *Moses H. Cone*'s eight-factor test weigh in favor of abstention, with one factor being at most neutral, abstention was appropriate in this case.   In order for a court to abstain from exercising its jurisdiction under *Colorado River*, it must first balance the weight of each of the eight factors outlined in *Moses H. Cone* in light of its "strict duty to exercise the jurisdiction that is conferred upon [it] by Congress," *Colorado River*, 424 U.S. at 818.[3]   Both parties have agreed

---

[2] In *American Family Life*, after the plaintiffs brought suit against an insurance company in state court, the company demanded by letter that the plaintiffs arbitrate their various state law claims against it pursuant to their arbitration agreement.  714 F.3d at 890.  The plaintiffs declined, and the company filed a motion in federal district court and in state court seeking an order to compel arbitration under Section 4 of the FAA.  *Id.*  After acknowledging that there were still "issues regarding the validity of the signatures" on the arbitration agreement form, the state court ordered discovery into the signatures' validity and denied the motion to compel arbitration without prejudice, permitting the company to refile its motion to compel arbitration after discovery was complete.  *Id.* at 890 n.1.  Thus, at the time the federal district court was weighing the motion to compel arbitration "no further progress ha[d] occurred" in the state suit, and there was accordingly no common claim of arbitrability under consideration in the state court.  *Id.*  In *R. J. Griffin*, after a homeowners' association filed suit against Griffin in state court asserting various state law claims, Griffin responded with a motion to compel arbitration.  3 F. App'x at 44.  Before the state court could hear that motion Griffin withdrew it, however, and some weeks later he filed a separate motion to compel arbitration in the federal district court.  *Id.*

[3] As this court has enumerated them, those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth Cos. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002).

with the district court that the first factor weighs against abstention, as the state court has assumed jurisdiction over no property in this case. Likewise, given the close proximity of the federal and state courts to one another, there is little reason to believe that the federal forum is any less convenient than the state forum, even if VanArsdale might prefer to litigate solely in state court. Because such "geographical considerations" are the ones relevant under this second factor, *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 207 (6th Cir. 2001), it, too, weighs against abstention.

The remaining six factors, however, appear to weigh in favor of abstention. The third and "paramount" factor in *Colorado River*—avoiding piecemeal litigation—supports abstention here, because, without abstaining, the district court would necessarily have to litigate the same issue resolved by the state trial court and now under consideration by the state intermediate court: whether VanArsdale had authority under his power of attorney to sign the optional ADR agreement on his mother's behalf. As this is the very definition of creating piecemeal litigation—where "different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results," *Romine*, 160 F.3d at 341—avoiding it in this case weighs in favor of the court's abstention.

Preferred Care disputes this conclusion by pointing to language in *Moses H. Cone* apparently suggesting that this factor concerns not which court decides arbitrability, but "whether failure to abstain would cause piecemeal resolution of the parties' underlying disputes." It is true that the concern for piecemeal litigation rejected in *Moses H. Cone* was based on the possibility of different fora resolving different underlying disputes, and the Supreme Court said this was inherent in suits involving underlying contractual claims not all of which are subject to arbitration. The Court did not address piecemeal litigation of the arbitration

issue itself, but that is the issue here. Bearing more directly on these facts is this court's holding in *Romine*, echoing *Colorado River* and earlier Supreme Court cases, *see Colorado River*, 424 U.S. at 818 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)), which makes clear that by resolving a claim already considered in a state court, a federal court would also be creating piecemeal litigation within the meaning of this factor, by duplicating the resolution of the very same issue in different courts. *Romine*, 160 F.3d at 341. As that would necessarily occur in this case if the federal court were now to decide the arbitrability issue for itself, this factor accordingly counsels abstention.

The fourth factor—the order in which the courts respectively gained jurisdiction—also points to abstention here, and for much the same reason: the state court has already disposed of the issue central to both the state and federal action. As the Supreme Court noted in *Moses H. Cone*, the priority relevant to assessing this factor is not to "be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." 460 U.S. at 21. By both of these measures, the state suit had priority here: not only was the state suit filed first, but, more importantly, the state court reached the pivotal issue of enforceability before briefing on that issue had concluded in federal court. This factor accordingly weighs in favor of abstention.

The fifth factor—the source of the governing law—does not clearly favor or disfavor abstention, however. Preferred Care correctly points out that the FAA governs the ADR agreement as a whole, so that any analysis of the agreement will inevitably involve federal law to at least some degree. Nonetheless, when determining the enforceability of an arbitration agreement—the question primarily at issue here and in the state courts—this court is bound to apply the state law of contract formation, *Richmond Health*, 811 F.3d at 195, placing state law at

least as much at issue as federal law. As a result, neither state nor federal law clearly predominates in this case. With the sources of the relevant law necessarily being mixed, then, this factor neither favors nor disfavors abstention.

The sixth factor—the adequacy of the state forum to protect Preferred Care's rights— does favor abstention, however, because the state court was applying its own law to decide the issue of enforceability and it did so consistently with its obligation to effect federal policy under the FAA. Just as in *Romine*, where there was "no legitimate contention that the Ohio state courts [were] incapable of safeguarding" federal statutory rights entrusted to them by Congress, 160 F. 3d at 342, there is likewise no contending here that the Kentucky court could not, or did not, faithfully enforce Preferred Care's rights under the FAA by applying *Ping*'s rule of contract formation—a case that this court has held, albeit in an unpublished opinion, was consistent with the FAA, *Pine Tree Villa, LLC v. Brooker*, 612 F. App'x 340, 345 (6th Cir. 2015). Here, as in *Romine*, this factor favors abstention.

Preferred Care nevertheless argues that the very fact that the state court invoked *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), when deciding the enforceability of the ADR agreement is enough to show that the state court could not adequately protect Preferred Care's rights under the FAA. The fact that the U.S. Supreme Court has granted certiorari in *Whisman*, however, undermines this argument. Even assuming that *Whisman* unduly extends *Ping*, and thus goes farther than this court has gone in rejecting arbitration, we can hardly anticipate that the state court will rule inconsistently with the Supreme Court's impending ruling.

Likewise the seventh factor—the progress of the respective suits—also weighs in favor of abstention, because, as noted, the state court has already granted summary judgment on the issue of enforceability, and that decision is now under consideration by the state intermediate court. Preferred Care appears to concede that the state-court proceeding has progressed further than the federal case—as indeed it must, with the state-court ruling on arbitrability having already been made and now on appeal in the state intermediate court. Preferred Care nevertheless leans heavily on the fact that, at least at the time Preferred Care filed briefs in this case, that appeal had been stayed pending finality in *Whisman*, *id.* at 40. Once *Whisman* became final, the state intermediate court returned Preferred Care's appeal to its active docket, and Preferred Care's argument on this factor thus loses much of its force. Indeed, much as in *Romine*, *see* 160 F.3d at 342, when taken in conjunction with the priority of filing, this factor all the more strongly suggests that abstention was appropriate in this case. Even if we assume, moreover, that the resolution of this case may turn on the Supreme Court's analysis in *Whisman*, it is no more likely that the state court will wait until the *Whisman* decision comes down than that the federal court would do the same.

The eighth and final factor—the presence of concurrent jurisdiction—also counsels in favor of abstention, as both courts have jurisdiction over the question of arbitrability under the FAA, *Moses H. Cone*, 460 U.S. at 25; *PaineWebber*, 276 F.3d at 208 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)). Although Preferred Care points to *PaineWebber* in arguing that concurrent jurisdiction would not suffice to tilt this factor toward abstention, in fact the *PaineWebber* court noted that concurrent jurisdiction could and arguably did favor abstention in that case, at least "marginally," 276 F.3d at 208. It nevertheless concluded that, because the source-of-law factor there favored exercising jurisdiction, this factor likewise weighed in favor

of exercising jurisdiction and thus against abstention. *Id.* Here, by contrast, where the source of the relevant law lies at least partly with the state, this factor accordingly tips, however slightly, in favor of abstention.

In sum, the state and federal actions in this case are parallel, and a majority of *Moses H. Cone*'s factors counsel against exercising jurisdiction. Although the balance of considerations made relevant by *Colorado River* would ordinarily weigh heavily against abstention, here that balance has tipped the other way. Under these narrow circumstances, then, the district court appropriately declined to exercise its jurisdiction.

III.

The judgment of the district court staying the matter pending resolution of the parallel state action is affirmed. As a result, we need not address Preferred Care's request for a preliminary injunction.